Steven J. Luckner, Esq.
Michael Nacchio, Esq.
**OGLETREE, DEAKINS, NASH**
**SMOAK & STEWART, P.C.**
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
(973) 656-1600
steven.luckner@ogletreedeakins.com
michael.nacchio@ogletreedeakins.com
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WILLIAM MCBURNIE, | : | Hon._____ |
|  | : | Case No._____ |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | *Civil Action* |
|  | : |  |
| CRC INSURANCE SERVICES, INC.; | : | **NOTICE OF REMOVAL & LOCAL CIVIL** |
| BB&T CORPORATION; BB&T | : | **RULE 11.2 CERTIFICATION** |
| INSURANCE HOLDINGS, INC., | : |  |
| BRANCH BANKING AND TRUST | : |  |
| COMPANY a/k/a BB&T BANK; JOHN | : |  |
| HOWARD, both individually and in his | : |  |
| supervisory capacity and/or managerial | : |  |
| capacity as Chairman and CEO of BB&T | : |  |
| Insurance Holdings, Inc.; SAMUEL |  |  |
| DAVISON OBENAUER a/k/a DAVE |  |  |
| OBENAUER, both individually and in his |  |  |
| supervisory and/or managerial capacity as |  |  |
| Chairman and CEO of CRC Insurance |  |  |
| Services, Inc.; JANE DOE I-V (these names |  |  |
| being fictitious as their present identities are |  |  |
| unknown); JOHN DOE I-V (these names |  |  |
| being fictitious as their present identities are |  |  |
| unknown); XYZ CORPORATION I-V |  |  |
| (these names being fictitious as their present |  |  |
| identities are unknown). |  |  |
| Defendants. |  |  |

-----------------------------------------------------------------------------

**TO:   CHIEF JUDGE AND JUDGES OF
        THE UNITED STATES DISTRICT COURT
        FOR THE DISTRICT OF NEW JERSEY**

**ON NOTICE TO:**

      O'CONNER, PARSONS, LANE & NOBLE, LLC
      Gregory B. Noble, Esq.
      R. Daniel Bause, Esq.
      Robert A. Ballard, III, Esq.
      959 South Springfield Avenue, 2nd Floor
      Springfield, New Jersey 07081

      Michelle M. Smith, Esq., Clerk
      The Superior Court of New Jersey
      Richard J. Hughes Justice Complex
      6th Floor North Wing
      P.O. Box 971
      Trenton, New Jersey 08625

      Clerk, Superior Court of New Jersey
      Law Division- Monmouth County
      71 Monument Park
      Freehold, New Jersey 07728-1266

**HONORABLE JUDGES:**

Defendants CRC INSURANCE SERVICES, INC, BB&T CORPORATION; BB&T INSURANCE HOLDINGS INC., BRANCH BANKING AND TRUST COMPANY, a/k/a BB&T BANK, JOHN HOWARD, both individually and in his supervisory capacity and/or managerial capacity as Chairman and CEO of BB&T Insurance Holdings, Inc.; SAMUEL DAVISON OBENAUER a/k/a DAVE OBENAUER, both individually and in his supervisory and/or managerial capacity as Chairman and CEO of CRC Insurance Services, Inc. ("Defendants")  hereby notice the removal of this action pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, to the United States District Court for the District of New Jersey, and as grounds therefore show as follows:

-2-

## I.     TIMELINESS OF REMOVAL

1.      On October 1, 2019, Plaintiff William McBurnie ("Plaintiff") filed a civil action in the Superior Court of New Jersey, Monmouth County, Law Division entitled *William McBurnie v. CRC Insurance Services, Inc., et al.* Docket No.: MON-L-3495-19 (hereinafter referred to as "State Court Action").   Copies of the Summons, Complaint, Civil Case Information Statement and Track Assignment Notice are attached hereto as Exhibit A.

2.      The removing Defendants' first notice of the State Court Action occurred on October 10, 2019 when the Summons and Complaint were delivered by process server to Defendants' Registered Agent, the Corporation Trust Company, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3140.

3.       Accordingly, pursuant to 28 U.S.C. § 1446(b)(2)(B), this Notice of Removal has been timely filed within 30 days after the first notice to the removing Defendants of Plaintiff's State Court Action.

4.      As set forth in more detail below, the removing Defendants do not waive, or intend to waive, any defenses they might have.

## II.    VENUE

5.      The New Jersey Superior Court, Monmouth County is located within the District of New Jersey.  *See* 28 U.S.C. § 110.  Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## III.   CONSENT

6.      Under 28 U.S.C. § 1446(b)(2)(A), all defendants properly joined and served in the state court action must join in or consent to the removal.   Here, all Defendants consent to removal.

## BASIS FOR REMOVAL – DIVERSITY JURISDICTION

7.     This action is properly removable under 28 U.S.C. § 1441(a), because the United States District Court has original jurisdiction in this case under 28 U.S.C. §1332(a), which provides that "The district courts shall have original jurisdiction in all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states…."

### A.     Amount In Controversy

8.     Plaintiff seeks damages for alleged violations of the New Jersey Conscientious Employee Protection Act ("CEPA") and the New Jersey Law Against Discrimination ("LAD"), and via the common law pursuant to *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58 (1980). Plaintiff's causes of action assert retaliation, age discrimination, and aiding and abetting liability. Plaintiff seeks back pay, front pay, compensatory damages, consequential damages, punitive damages, and enhanced attorney's fees according to *Rendine v. Pantzer*, 141 N.J. 292 (1995). The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

### B.     Diversity Of Citizenship

9.     On information and belief, Plaintiff is a citizen of the State of New Jersey.  (See Complaint ("Compl.") ¶ 1).

10.     All Corporate Defendants are citizens of States other than New Jersey within the meaning of 28 U.S.C. § 1332.  Defendant CRC Insurance Services, Inc. is a corporation with its principal place of business in Birmingham, Alabama.  (*See* Compl. ¶ 2).  Defendant BB&T Corporation is a corporation with a principal place of business in Winston-Salem, North Carolina.  (*See* Compl. ¶ 3).  Defendant BB&T Insurance Holdings, Inc. is a Delaware Corporation.  (*See* Compl. ¶ 4).  Defendant Branch Banking and Trust Company a/k/a BB&T

Bank is a corporation with its principal place of business in Winston-Salem, North Carolina. (*See* Compl. ¶ 5).

11.     Individual Defendant John Howard ("Mr. Howard") is the Chairman and CEO of BB&T Insurance Holdings.  (*See* Compl. caption).  Plaintiff alleges that Mr. Howard lives in Far Hills, New Jersey.  (See Compl. ¶ 6.  Although Mr. Howard is an alleged citizen of New Jersey within the meaning of 28 U.S.C. § 1332, his citizenship should be disregarded for purposes of diversity jurisdiction and removal, pursuant to the fraudulent joinder doctrine, as set forth below.

12.     Individual Defendant Samuel Obenauer ("Mr. Obenauer") is the Chairman and CEO of CRC Insurance Services, Inc.  (*See* Compl. at case caption; ¶ 19).  Mr. Obenauer is alleged to reside in Mendham, New Jersey, and therefore, a resident of New Jersey under 28 U.S.C. § 1332.   However, Mr. Obenauer's claimed residence in New Jersey should be disregarded for purposes of diversity jurisdiction and removal, on the grounds that he is also fraudulently joined.

   **C.     Fraudulent Joinder Doctrine**

12.     If a court determines that non-diverse defendants have been fraudulently joined, their citizenship may be disregarded and the action may be removed.  *See generally Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992); *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991). Joinder is deemed fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Boyer*, 913 F.2d at 111.

13.     Here, there is "no reasonable basis in fact or colorable ground supporting the claim against" either Messrs. Howard or Obenauer.  These individuals, who hold the titles of

Chairmen and Chief Executive Officers, are fraudulently joined.  Plaintiff joined them only because they are purportedly New Jersey residents while all Corporate Defendants are residents of states other than New Jersey.  If Plaintiff had not joined either Messrs. Howard or Obenauer, complete diversity exists.

14.     Defendants respectfully request the Court disregard their New Jersey citizenship and accept the removal of this action.

**D.     Facts Establishing Fraudulent Joinder[1]**

**(1) Plaintiff's Employment**

15.     In January 2010, Plaintiff joined the "Kullman Team" at a New York City predecessor company to CRC Insurance Services known as Crump Insurance Services ("Crump") (Compl. ¶ 11).

16.     BB&T acquired Crump in 2012 and Crump became a BB&T subsidiary.  (Compl. ¶ 12).    Plaintiff's direct supervisor was Andrew Kullman, Executive Vice President at CRC. (Compl. 15).

17.     Plaintiff alleges that Mr. Kullman subjected him to unlawful treatment. (Compl. ¶ 14).

18.     In particular, Plaintiff alleges that he informed Mr. Obenauer about Mr. Kullman's business misfeasance (Compl.¶ 19).   Once Mr. Kullman learned of Plaintiff's complaint about him to Mr. Obenauer, Mr. Kullman told Plaintiff to "never again go over [Mr. Kullman's head] … to Dave Obenauer."  (Compl. 21).   Mr. Kullman "began openly criticizing" Plaintiff's performance "without justification."  (Compl. ¶ 22).   The Complaint appears to allege that Mr. Kullman set into motion events that culminated with Plaintiff's failure.

---

[1] Unless otherwise indicated, this statement of facts is derived from Plaintiff's Complaint and assumed to be true for purposes of this Notice of Removal only.

19.     Plaintiff alleges no other facts against Mr. Obenauer, but sues him (in his capacity as Chairman and CEO), and not Mr. Kullman, his supervisor.

20.     Plaintiff also alleges unlawful treatment by "CRC Regional Director" Kevin Hahn ("Mr. Hahn").  (*See* Compl. ¶ 22).   He identifies Mr. Hahn as his supervisor in December 2017.  (Compl. § 31).

21.     First, he alleges that Mr. Hahn reassigned him to a "stand-alone team" in September 2015.  (Compl. ¶ 25).

22.     He also alleges that Mr. Hahn, on March 5, 2018, subjected him to a "unilateral highly-derogatory annual performance review" and a "reduction" in his salary.  (Compl. ¶ 33). Despite these "attacks," Plaintiff did not sue him.  (Compl. 34).

23.     Plaintiff also alleges that both Messrs. Kullman and Hahn discriminated against him on the basis of his age.  (Compl. ¶¶ 47-53).

**(2)     Plaintiff's Causes of Action.**

24.     The Complaint asserts five (5) causes of action.

25.     Plaintiff asserts retaliation claims under CEPA and *Pierce* in his first two causes of action.  (*See* Compl. ¶¶ 52-57).  He alleges LAD age discrimination and retaliation in his third and fourth causes of action.  His fifth cause of action appears to assert aiding and abetting liability under both LAD and CEPA.

**(3)     Plaintiff Has No Reasonable Basis in Fact or Colorable Claims against Chairmen and CEOs Howard and Obenauer.**

26.      "A Defendant may still remove the action if … non-diverse defendants were 'fraudulently' named or joined soley to defeat federal jurisdiction.'"  *In re Briscoe,* 448 F.3d 201, 216 (3d Cir. 2006).   Joinder is deemed fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in

good faith to prosecute the action against the defendant or seek a joint judgment." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990).

27.     Plaintiff has not alleged any facts that provide a reasonable basis for a claim that either of Messrs. Howard or Obenauer are aiders and abettors under CEPA or the LAD. Plaintiff has not alleged any facts to show that these individuals performed <u>any</u> wrongful act that caused an injury to him – a necessary element of an aiding and abetting claim – much less that these individuals "knowingly and substantially" assisted a predicate violation of either statute. *See Tarr v. Bob Ciasulli's Mack Auto Mall, Inc.*, 181 N.J. 70, 84 (2004).[2]

28.     Mr. Howard, the "Chairman and Chief Executive Officer of BB&T Insurance Holdings," is the subject of ***one*** paragraph of factual allegations - paragraph six (6). This paragraph only alleges that Mr. Howard is a New Jersey resident and that he was a supervisor. (*See* Compl. ¶ 6). Plaintiff does not mention Mr. Howard again anywhere in the Complaint until the "Wherefore" clauses.

29.     Mr. Obenauer, the "Chairman and Chief Executive Officer of CRC Insurance Services, Inc.", is only alleged to have been the recipient of purported Complaints from Plaintiff and to have set into motion an investigation. (*See* Compl. ¶ 19, 20, 41). These three paragraphs aside, Plaintiff also does not name Mr. Obenauer anywhere in the Complaint other than the "Wherefore' clauses.

30.     No facts are alleged that either Messrs. Howard or Obenauer had any role in altering the terms and conditions of Plaintiff's employment. Yet, the two people who allegedly did - Messrs. Kullman and Hahn - Plaintiff did not sue.

---

[2] The analysis of a retaliatory discharge claim mirrors the analysis of a retaliation claim under New Jersey state discrimination law. *Kolb v. Burns*, 320 N.J. Super. 467, 478-79 (App. Div. 1999).

31.     There is no reasonable basis supporting any allegation that Mr. Howard "knowingly and substantially" aided any unlawful conduct.  *Tarr*, 181 N.J. at 84.  Again, he is not alleged to have done anything, anywhere in the Complaint.

32.     The only allegations against Mr. Obenauer appear to be that he received a Complaint from Plaintiff and referred it for investigation.  (*See supra* ¶ 29).  This provides no reasonable basis to join him.  "An unsubstantiated allegation of an improper…investigation does not implicate [aiding and abetting] liability as such conduct by itself does not rise to the amount of assistance required to be deemed 'aiding and abetting'…." *Gardenhire v. New Jersey Mfrs. Ins. Co.*, 333 N.J. Super 219, 229-230 (Law Div. 2000).

33.     Plaintiff joined Messrs. Howard and Obenauer in a thinly veiled but fraudulent attempt to defeat diversity.  Had his intention been otherwise, he would have joined his actual supervisors, Messrs. Kullman and Hahn, about whom he so vigorously complains.

34.     Yet, Messrs. Kullman and Hahn would not have assisted him in his attempt to avoid diversity jurisdiction as neither are residents of New Jersey.

## **CONCLUSION**

35.     Pursuant to 28 U.S.C. § 1446, copies of this Notice of Removal have this day been served upon Plaintiff, and will be promptly filed with the Clerk of the Superior Court of New Jersey and the Clerk of the Superior Court in Monmouth County, New Jersey.

36.     By removing this matter, the removing Defendants do not waive, or intend to waive, any defenses they might have including, but not limited to, insufficiency of process and insufficiency of service of process and/or lack of personal jurisdiction, and reserve the right to assert all defenses herein.

37.     If any questions arise concerning the propriety of this removal, the removing Defendants request that they be allowed to file a brief supporting removal and be heard in oral argument.

**WHEREFORE**, Defendants respectfully request that this Honorable Court take jurisdiction of this action and issue all necessary orders and process to remove said action from the Superior Court of New Jersey, Monmouth County, Law Division to the United States District Court for the District of New Jersey.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Attorneys for Defendants

Date:  November 8, 2019                    By: _s/ Steven J. Luckner_____
                                                Steven J. Luckner
                                                Michael Nacchio

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 11.2</u>

I, Steven J. Luckner, Esq., counsel for Defendants, certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

s/  Steven J. Luckner        
Steven J. Luckner, Esq.
Michael Nacchio, Esq.
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Tel: (973) 656-1600
Fax: (973) 656-1611
steven.luckner@ogletree.com
michael.nacchio@ogletree.com

Dated: November 8, 2019

40420782.1

# EXHIBIT A

 **CT Corporation**

**Service of Process Transmittal**
10/10/2019
CT Log Number 536415924

**TO:** Mark Booz, Litigation Practice Mgr & Sr VP
BB&T
200 West 2nd Street, 3rd Floor
Winston Salem, NC 27101-1255

**RE:** Process Served in Delaware

**FOR:** BB&T Insurance Holdings, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | William Mcburnie, Pltf. vs. Crc Insurance Services, Inc., et al., Dfts. // To: BB&T Insurance Holdings, Inc. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Complaint, Statement, First Request, Certification, Service List |
| **COURT/AGENCY:** | Monmouth County Superior Court, NJ<br>Case # MONL349519 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination - 10/08/2018 |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 10/10/2019 at 12:13 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Within 35 days after the date of receipt |
| **ATTORNEY(S) / SENDER(S):** | Gregory B. Noble<br>Oconnor, Parsons, Lane & Noble, LLC<br>959 South Springfield Avenue, 2nd Floor<br>Springfield, NJ 07081<br>908-928-9200 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/11/2019, Expected Purge Date: 10/16/2019<br><br>Image SOP<br><br>Email Notification,  Mark Booz  mbooz@bbandt.com<br><br>Email Notification,  Tammy Stringer  tstringer@bbandt.com |
| **SIGNED:**<br>**ADDRESS:** | The Corporation Trust Company<br>1999 Bryan St Ste 900<br>Dallas, TX 75201-3140 |
| **For Questions:** | 877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# O'CONNOR, PARSONS, LANE & NOBLE, LLC

## ATTORNEYS AT LAW

959 South Springfield Avenue, 2nd Floor, Springfield, New Jersey 07081
Tel: 908-928-9200 • Fax: 908-928-9232
Tel: 800-586-5817

Scott A. Parsons ♦
Paul A. O'Connor, III ♦*
William R. Lane ♦
Gregory B. Noble ♦

R. Daniel Bause +
Alexandra Loprete +
Robert A. Ballard, III

+ Admitted in NJ & NY
*Admitted in NJ & PA
♦ Certified By The Supreme Court of
New Jersey as a Civil Trial Attorney

Gerald B. O'Connor
(1942 - 2015)

of Counsel
Patricia J. Cooney
William V. Lane
Debra D. Tedesco

October 8, 2019

**Via Hand Delivery**
The Corporation Trust Company
Registered Agent for BB&T Insurance Holdings, Inc.
1209 North Orange Street
Wilmington, DE 19801

Re:    William McBurnie v. CRC Insurance Services, Inc.
      Docket No. MON-L-3495-19

Dear Sir/Madam:

In connection with the above-captioned matter, and in accordance with the Rules and practices of our Court, we enclose herewith a copy of Summons, together with a copy of the Complaint filed in this case on October 1, 2019 with the Deputy Clerk of the Superior Court, Monmouth County, Law Division, for you to answer within thirty-five (35) days in accordance with the Summons. A copy of the Track Assignment Notice is attached to the Complaint.

Demand is hereby made upon you to answer interrogatories and document requests.

Very truly yours,

R. DANIEL BAUSE

RDB:cp
Enclosure

**O'CONNOR, PARSONS, LANE & NOBLE, LLC**
Gregory B. Noble, Esq. (#017601998)
R. Daniel Bause, Esq. (#019122011)
Robert A. Ballard, III, Esq. (#087192014)
959 South Springfield Avenue, 2nd Floor
Springfield, New Jersey 07081
Phone: 908-928-9200
Attorneys for Plaintiff

| | |
|---|---|
| WILLIAM MCBURNIE,<br>Plaintiff,<br><br>v.<br><br>CRC INSURANCE SERVICES, INC.;<br>BB&T CORPORATION; BB&T<br>INSURANCE HOLDINGS, INC.;<br>BRANCH BANKING AND TRUST<br>COMPANY a/k/a BB&T BANK; JOHN<br>HOWARD, both individually and in his<br>supervisory and/or managerial capacity<br>as Chairman and CEO of BB&T<br>Insurance Holdings, Inc.; SAMUEL<br>DAVISON OBENAUER a/k/a DAVE<br>OBENAUER, both individually and in<br>his supervisory and/or managerial<br>capacity as Chairman and CEO of CRC<br>Insurance Services, Inc.; JANE DOE I-V<br>(these names being fictitious as their<br>present identities are unknown); JOHN<br>DOE I-V (these names being fictitious<br>as their present identities are unknown);<br>XYZ CORPORATION I-V (these names<br>being fictitious as their present identities<br>are unknown),<br>                    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MONMOUTH COUNTY<br>DOCKET NO:   MON-L-3495-19<br><br>Civil Action<br><br>SUMMONS |

FROM THE STATE OF NEW JERSEY, TO THE ABOVE-NAMED DEFENDANT:

**THE CORPORATON TRUST COMPANY**
**REGISTERED AGENT FOR**
**BB&T INSURANCE HOLDINGS, INC.**

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to the summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written

answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it.   (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153 deptyclerklawref.pdf.)  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, Box 971, Trenton, NJ 08625-0971.  A Filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.   You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above.   A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.   If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529).  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.   A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153deptyclerklawref.pdf.

/s/ Michelle M. Smith

MICHELLE M. SMITH
Acting Clerk of the Superior Court

DATED:   October 8, 2019

Name and address of Defendant to be served:
The Corporation Trust Company
Registered Agent for BB&T Insurance Holdings, Inc.
1209 North Orange Street
Wilmington, DE 19801

**O'CONNOR, PARSONS, LANE & NOBLE, LLC**
Gregory B. Noble, Esq. (#017601998)
R. Daniel Bause, Esq. (#019122011)
Robert A. Ballard, III, Esq. (#087192014)
959 South Springfield Avenue, 2nd Floor
Springfield, New Jersey 07081
Phone: 908-928-9200
Attorneys for Plaintiff

| | |
|---|---|
| WILLIAM MCBURNIE,<br>Plaintiff,<br><br>v.<br><br>CRC INSURANCE SERVICES, INC.;<br>BB&T CORPORATION; BB&T<br>INSURANCE HOLDINGS, INC.;<br>BRANCH BANKING AND TRUST<br>COMPANY a/k/a BB&T BANK; JOHN<br>HOWARD, both individually and in his<br>supervisory and/or managerial capacity<br>as Chairman and CEO of BB&T<br>Insurance Holdings, Inc.; SAMUEL<br>DAVISON OBENAUER a/k/a DAVE<br>OBENAUER, both individually and in<br>his supervisory and/or managerial<br>capacity as Chairman and CEO of CRC<br>Insurance Services, Inc.; JANE DOE I-V<br>(these names being fictitious as their<br>present identities are unknown); JOHN<br>DOE I-V (these names being fictitious<br>as their present identities are unknown);<br>XYZ CORPORATION I-V (these names<br>being fictitious as their present identities<br>are unknown),<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MONMOUTH COUNTY<br>DOCKET NO:<br><br>Civil Action<br><br>**COMPLAINT AND JURY DEMAND** |

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

1. Plaintiff William McBurnie ("Mr. McBurnie" or "Plaintiff") resides at 316 Timber Hill Drive, Morganville, New Jersey 07751 and at all times relevant hereto was employed by defendants and was a holder of a resident New Jersey Insurance Producer license.

2.    Defendant CRC Insurance Services, Inc. ("CRC" or collectively with other defendant entities "defendants" or the "Company") is a company with the principal business address of 1 Metroplex Drive, Suite 400, Birmingham, Alabama 35209 which had plaintiff in its employ during the relevant time periods referenced herein.

3.    Defendant BB&T Corporation ("BB&T" or collectively with other defendant entities "defendants" or the "Company") is a company with the principal business address of 200 West Second Street, Winston-Salem, North Carolina 27101 which had plaintiff in its employ during the relevant time periods referenced herein.

4.    Defendant BB&T Insurance Holdings, Inc. ("BB&T" or collectively with other defendant entities "defendants" or the "Company") is a Delaware corporation which had plaintiff in its employ during the relevant time periods referenced herein.

5.    Defendant Branch Banking and Trust Company a/k/a BB&T Bank ("BB&T" or collectively with other defendant entities "defendants" or the "Company") is a company with the principal business address of 200 West Second Street, Winston-Salem, North Carolina 27101 which had plaintiff in its employ during the relevant time periods referenced herein.

6.    Defendant John Howard resides at 78 Spring Hollow Road, Far Hills, New Jersey 07931 and at all times relevant hereto was employed by defendants and/or BB&T out of the Company's Roseland, New Jersey and/or Parsippany, New Jersey location(s) and had supervisory and/or managerial authority over plaintiff.

7.    Defendant Samuel Davison Obenauer a/k/a Dave Obenauer resides at 303 Mendham Road West, Mendham, New Jersey 07945 and at all times relevant hereto was employed by defendants and/or CRC out of the Company's Roseland, New

Jersey and/or Parsippany, New Jersey location(s) and had supervisory and/or managerial authority over plaintiff.

8.      At all times relevant hereto, the defendants Jane Doe I-V and John Doe I-V are fictitious names used to identify those individuals whose names are presently unknown who engaged in wrongful acts outlined herein and their identities are presently unknown.

9.      At all times relevant hereto, the defendants XYZ Corporation I-V are fictitious names used to identify those corporations or other business entities which names are presently unknown but include corporations or other business entities incorporated under the laws of the State of New Jersey and/or other states and had plaintiff under their employ.

10.     Mr. McBurnie has worked in the insurance industry since in or about 1977 and worked for approximately 20 years at Johnson & Higgins before same was purchased by Marsh & McClennan Companies, Inc. ("Marsh") in or about April 1997.

11.     Thereafter, on or about January 11, 2010, Mr. McBurnie commenced employment as a Vice President of Crump Insurance Services, Inc. ("Crump") a Predecessor company of CRC, in its New York City office, reporting to Alex Kullman, in a position described in the Company's January 6, 2010 offer letter to Mr. McBurnie as follows: "Your role within the Kullman Team will be to expand existing, as well as generate new relationships that will result in revenue production."

12.     On or about April 2, 2012, Crump was acquired by BB&T and became part of BB&T's then-existing subsidiary, CRC Insurance Services, Inc.

13.     In or about late May 2015, Mr. McBurnie became aware of an issue whereby he reasonably believed CRC was engaged in fraudulent and/or illegal activity

with regard to one of the Company's accounts, Transel Elevator & Electric, Inc. ("Transel"), with respect to which CRC was making insurance placements for or on behalf of CRC's retail brokerage client, Marsh.

14.   Specifically, Mr. McBurnie was informed by a CRC colleague, Joseph Sweeney, that a certain underwriter, Michael Wright of Axis Insurance ("Axis"), had stated to Mr. Sweeney his willingness to write a premium at $100,000 to $150,000 cheaper than the premium Alex Kullman, Executive Vice President at CRC and the direct supervisor of both Mr. McBurnie and Mr. Sweeney, was instructing Mr. Wright to quote.

15.   Furthermore, Mr. McBurnie became aware that Mr. Kullman apparently was neither willing to entertain this quotation by Mr. Wright at the significantly lesser premium that was available from Axis nor advise Marsh of the availability thereof.

16.   As such, Mr. McBurnie notified his colleague, Joseph Sweeney, that failure to notify Marsh or Transel concerning the possibly of significant premium savings could be construed as fraudulent behavior, and quite possibly larcenous behavior, on the part of CRC.

17.   On or about May 28, 2015, Mr. McBurnie left messages for both Mr. Kullman and Mr. Wright regarding this topic.

18.   Mr. Kullman was furious at this perceived interference in his dealings. In fact, on or about May 29, 2015, Mr. Kullman threatened to "write you [Mr. McBurnie] up" for the resistance.

19.   Upon receiving this threat, on or about May 29, 2015, Mr. McBurnie contacted Dave Obenauer, Chairman and CEO of CRC, by telephone, and notified Mr. Obenauer of the matter and issues that were ongoing.

20.   Shortly thereafter, Mr. Obenauer advised Mr. McBurnie he was referring the matter to "Corporate Investigations."

21.   On or about July 16, 2015, Mr. Kullman contacted Mr. McBurnie and called him into his office, advising him that the "the internal investigation was concluded with no finding of wrongdoing" and warning him that "you [Mr. McBurnie] will never again go outside the Company, never again go over my [Mr. Kullman's] head and never again go to Dave Obenauer."

22.   Immediately following this meeting on or about July 16, 2015, and although a favorable performance review had been given to Mr. McBurnie by Mr. Kullman a few months prior, Mr. Kullman began openly criticizing Mr. McBurnie's performance without justification, claiming that he was not meeting his revenue goals and threatening in writing, "further disciplinary action, up to and including termination of [Mr. McBurnie's] employment" with the knowledge and apparent approval of CRC Regional Director Kevin Hahn.

23.   Following the above concerns about apparent fraud at CRC, in or about July/August 2015, Mr. McBurnie uncovered a scheme at the Company whereby CRC employees were falsifying documents and altering commission figures on such documents for the apparent purpose of cheating Marsh out of certain commissions owed pursuant to the commission agreement between CRC and Marsh.

24.   On or about August 3, 2015, Mr. McBurnie spoke to David Hall of BB&T, the parent Companies to CRC, Corporate Investigations department concerning his findings, and thereafter, on or about August 4, 2015, mailed to Mr. Hall certain supporting documentation regarding such fraudulent activity.

25.   Thereafter, CRC retaliated against Mr. McBurnie in swift manner.   On or

about August 6, 2015, Mr. Hahn summoned Mr. McBurnie to Mr. Hahn's New York City office and informed him that effective September 1, 2015, Mr. McBurnie would be removed from the Kullman Team and reassigned to a stand-alone team consisting only of Mr. McBurnie and one "partial" assistant, located in CRC's Long Island office, who would be available to Mr. McBurnie for only 25% of the assistant's time.

26.     In the days immediately preceding September 1, 2015, Mr. McBurnie was instructed to move from his existing office with the Kullman Team to an office at the opposite corner of the floor.   Mr. McBurnie complied.

27.     The Company's expulsion of Mr. McBurnie from the Kullman team to Mr. McBurnie's own isolated team came simultaneously with diminishment of Mr. McBurnie's role at CRC, from his original dual role of expanding existing relationships of the Kullman Team and generating new relationships, to a singular role of generating and developing Mr. McBurnie's own relationships only, as well as with corresponding diminishment in Mr. McBurnie's opportunity for bonus awards.

28.     On or about February 2017, Mr. McBurnie began working almost exclusively out of his home in Morganville, New Jersey.

29.     In or about October 2017, Mr. McBurnie was afforded office space by the Company in CRC's Shrewsbury, New Jersey office, where he worked, in addition to working at his Morganville, New Jersey home until his termination on or about October 8, 2018.

30.     During this time period, the retaliatory scheme against Mr. McBurnie for his reportage of fraudulent conduct continued, including the Company's establishment of disingenuous "performance reviews" and shifting "revenue production targets" that in fact were thinly-veiled efforts to force him from the Company, along with reduction,

and soon afterward elimination, of bonus awards.

31.     On or about December 15, 2017, Mr. McBurnie's supervisor, Kevin Hahn, called Mr. McBurnie to a meeting in Mr. Hahn's New York City office.  At the meeting, discussion turned to Mr. McBurnie's expected full-year 2017 revenue, factors that contributed to Mr. McBurnie's then-current production level, steps Mr. McBurnie was taking to increase revenue, and an expected time frame to achieve revenue increases. When Mr. McBurnie stated to Mr. Hahn that the circumstances of his involuntary reassignment several years earlier had created impediments to revenue production and that he therefore needed time to build his revenue book, Mr. Hahn became agitated.  As the meeting was about to end, Mr. Hahn gave Mr. McBurnie a clear "revenue production target" for the following year, stating that Mr. McBurnie needed to get his annual revenue over $400,000, and stating as well that there would be a review in six months.

32.     By March 1, 2018, with Mr. McBurnie's year-to-date revenue at an amount more than 30% greater than his year-to-date revenue as of March 1, 2017, it was becoming clear that Mr. McBurnie was well on a path to achieve at least the $400,000 annual revenue production target that had been set for him by Mr. Hahn in December 2017.

33.     Nevertheless, in a series of emails sent by Mr. Hahn to Mr. McBurnie beginning on or about March 5, 2018, Mr. Hahn announced reductions in Mr. McBurnie's salary and a unilateral, highly-derogatory annual performance review that Mr. Hahn refused to discuss with Mr. McBurnie.  Those emails from Mr. Hahn included:

(i)     Mr. Hahn's email to Mr. McBurnie, sent on or about March 5, 2018,

in which Mr. Hahn announced a reduction in Mr. McBurnie's salary to $125,000 (down from Mr. McBurnie's then-current salary of $185,000) effective April 1, 2018, this announcement couched in context of fabrications Mr. Hahn's included in his email regarding details of discussions between Mr. Hahn and Mr. McBurnie during their December 15, 2017 meeting;

(ii)    Mr. Hahn's email to Mr. McBurnie, sent on or about March 8, 2018, in which Mr. Hahn, in apparent response to Mr. McBurnie's objection to the annual salary reduction to $125,000 that Mr. Hahn had announced in his March 5, 2018 email, stated that Mr. McBurnie's salary would be reduced to $160,000 effective May 1, 2018;

(iii)   Mr. Hahn's email to Mr. McBurnie, sent on or about March 8, 2018, in which Mr. Hahn, with reference to Mr. McBurnie's annual performance review, stated that Mr. McBurnie's overall rating was "Needs Immediate Improvement," and stating that a document would be processed that would "spell out performance improvement levels."

34.    Mr. McBurnie responded to Mr. Hahn's attacks with several emails and several unsuccessful attempts to discuss matters with Mr. Hahn by telephone. Finally, on or about March 8, 2018, Mr. McBurnie sent an email to Mr. Hahn stating that Mr. McBurnie would follow with substantive written response to Mr. Hahn's emails and suggesting a meeting between Mr. Hahn and Mr. McBurnie to discuss matters.

35.    Mr. Hahn responded to Mr. McBurnie's aforementioned March 8, 2018 email with an email reply of same date, in which Mr. Hahn stated to Mr. McBurnie: "Bill- there is no written response that will change anything and I'm not amenable to a meeting."

36.    In an email from Kevin Hahn to Mr. McBurnie on or about March 9, 2018, with subject heading "Disciplinary Action for Unacceptable Job Performance," Mr. Hahn stated that the document shown in the email's subject heading had been processed in the Company's workday system, approved by Human Resources, and would be forwarded to Mr. McBurnie.   In his email, Mr. Hahn went on to state that the document "outlines a minimum production level required of $300,000 at 6/30/2018 and $600,000 at 12/31/2018," and that Mr. McBurnie needed to "show us you [are] capable of being a CRC producing broker and these production levels are a minimum level for a senior person."   Mr. Hahn closed his email with the following instruction to Mr. McBurnie: "Do not forward any response/memo other than a viable thought out production plan for this year."

37.    Indeed, it appears that such targets in these "plans" were constantly shifted by the Company in a fashion adverse to Mr. McBurnie and in a manner clearly seeking to allegedly justify his retaliatory termination, making it seemingly impossible for Mr. McBurnie to continue to comply with such demands.

38.    As a result of this ongoing pattern of the Company isolating Mr. McBurnie, imposing unrealistic expectations and threatening reductions in salary, among other things, Mr. McBurnie sent detailed memoranda on or about March 31, 2018 to CRC and BB&T senior management concerning the apparent fraudulent business practices of the Company as well as other violations of the law he perceived to be occurring during his employment, up to and including the actions referenced herein.

39.    Included in these March 31, 2018 memoranda were allegations by Mr. McBurnie that CRC and others had engaged in illegal, fraudulent, unethical and/or

criminal activity, up to and including grand larceny, criminal fraud, wire fraud, racketeering and antitrust violations under both federal and state laws, including violations of Sections 155 and 190 of the New York Penal Law and of 18 U.S.C. § 1343.

40.     Thereafter, an internal investigation was instituted by the Company as to Mr. McBurnie's March 31, 2018 memoranda and the allegations of fraudulent, illegal, unethical and/or criminal behavior detailed therein.

41.     On or about April 30, 2018, Mr. McBurnie sent an email to Dave Obenauer detailing Mr. McBurnie's concerns regarding "tying arrangements," also known as "tie-in sales," to which CRC was party in violation of both state and federal antitrust laws.   Thereafter, on or about May 1, 2018 and May 6, 2018, Mr. McBurnie sent follow-up emails to Dave Obenauer providing additional information regarding the matter of "tying arrangements," including Mr. McBurnie's observation in his May 6, 2018 email that such illegal arrangements appear to be engrained in the business model of a CRC subsidiary, J.H. Blades.

42.     On or about July 17, 2018, at the request of Mr. Brian Prater of BB&T Corporation's Corporate Investigations office, Mr. McBurnie sent to Mr. Prater an email detailing specific examples of longstanding breaches by CRC of CRC's contractual agreement with its retail insurance broker client Arthur J. Gallagher ("Gallagher") regarding commissions CRC could retain for its own account on placements CRC made with insurers on behalf of Gallagher and Gallagher's clients where Gallagher's revenue was either "capped" or based on a fee (rather than on a commission percentage).   The examples were placements made by CRC over a five-year period on each of two accounts, one account being L3 Technologies, Inc. (formerly known as

L-3 Communications) on which CRC had made placements on behalf of Gallagher's New York City office, and the other account being Polaris Industries, Inc. on which CRC had made placements on behalf of Gallagher's New Jersey based subsidiary, Gallagher McIntyre. Attachments to Mr. McBurnie's July 17, 2018 email to Mr. Prater demonstrated clearly that: (i) on those two accounts combined, over the aforesaid five-year period, CRC had retained for its own account, in violation of CRC's contractual agreement with Gallagher, more than $700,000 in commissions to which CRC was not entitled; as well as (ii) the fact that company-wide notice had been sent to all CRC brokers regarding details of the aforesaid agreement with Gallagher regarding CRC commissions.

43.     Thereafter, on or about August 30, 2018, Mr. McBurnie sent a follow-up email to Mr. Prater, in which Mr. McBurnie provided further evidence of company-wide notice to all CRC brokers of the aforesaid "commissions agreement" with Gallagher.

44.     However, after approximately six months had gone by without any conclusions being drawn, on or about October 1, 2018, Mr. McBurnie sent another memorandum to Kelly King, Chairman and CEO of BB&T, and Robert Johnson, Jr., Senior EVP and General Counsel of BB&T, in which Mr. Mc Burnie forwarded to Mr. King and Mr. Johnson a copy of his separate memorandum of same date to Brian Prater of BB&T Corporate Investigations and Stefani Petty of BB&T Human Resources.

45.     Those October 1, 2018 memoranda further detailed the apparent fraudulent, illegal, unethical and/or criminal practices that Mr. McBurnie reasonably perceived, up to and including the practices detailed previously herein, and including

as well details of the Company's money laundering practices, and mirroring his prior detailed memoranda of March 31, 2018.

46.    Thereafter, and although Mr. McBurnie had substantively met, by close of business on June 29, 2018, the required minimum production level of $300,000 that had been imposed in or about March 2018, and although Mr. McBurnie's revenue performance during 2018 was clearly on the rise, on or about October 8, 2018 the Company nevertheless terminated Mr. McBurnie's employment on the basis, as stated to Mr. McBurnie, of allegations that Mr. McBurnie had not "hit" the aforesaid June 30, 2018 target and that Mr. McBurnie's revenue performance was in "continued decline."

47.    In addition to the foregoing, Mr. McBurnie, who is 63 years old, had uncovered and provided detailed complaints to Company management for what he believed was clear-cut age discrimination unfolding during his employment and targeting him specifically.

48.    Specifically, and as detailed by Mr. McBurnie in correspondence with management, Mr. McBurnie had obtained information that Mr. Kullman had made discriminatory pronouncements that he intended to "go young" with Company hires and that he would not hire anyone over the age of 50.

49.    These discriminatory statements were allegedly made by Mr. Kullman to his team members at Kullman Team meetings and elsewhere and, according to one of Mr. McBurnie's colleagues, were in fact put into writing in correspondence to Marsh.

50.    Indeed, on or about December 16, 2016 at the CRC Midtown New York City company Christmas party, Mr. Hahn made joking reference to Mr. Kullman's "going young" policy.

51. This apparent age discrimination was detailed in plaintiff's memorandum to management and served as another illegal reasoning behind the termination of his employment on or about October 8, 2018.

## FIRST COUNT

### Conscientious Employee Protection Act

52. Plaintiff hereby incorporates each and every allegation of the within paragraphs of this Complaint as if they were fully set forth at length herein.

53. By and through the aforementioned actions, including, but not limited to suspending and terminating plaintiff's employment, defendants violated the Conscientious Employee Protection Act ("CEPA") by retaliating against plaintiff for, among other things:

    a.    disclosing or threatening to disclose to a supervisor or a public body and activity, policy or practice of the employer or another employer, with whom there is a business relationship, that he reasonably believed was in violation of a law, or rule or regulation promulgated pursuant to law, and/or

    b.    providing information to, or testifying before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer or another employer, with whom there is a business relationship and/or

    c.    objecting to or refusing to participate in any activity, policy or practice which he reasonably believed was (1) in violation of a law, or rule, or regulation promulgated pursuant to law and/or constitutes improper quality of patient care and/or (2) fraudulent or criminal, and/or (3) incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

54. As a result of defendants' retaliation for plaintiff's resistance and/or objections to what he reasonably believed was improper and/or illegal activity by defendants, including but not limited to acts that he reasonably believed were illegal

and/or contrary to various statutory and/or regulatory authority and/or constituted outright fraudulent and/or unlawful behavior, plaintiff has suffered, and continues to suffer, economic loss, harm to career, harm to reputation, bodily injury with physical manifestations, severe emotional distress, and physical pain and suffering, as well as all other such damages compensable under CEPA.

WHEREFORE, plaintiff, William McBurnie, demands judgment against defendants, CRC Insurance Services, Inc.; BB&T Corporation; BB&T Insurance Holdings, Inc.; Branch Banking And Trust Company a/k/a BB&T Bank; John Howard, both individually and in his supervisory and/or managerial capacity as Chairman and CEO of BB&T Insurance Holdings, Inc.; Samuel Davison Obenauer a/k/a Dave Obenauer, both individually and in his supervisory and/or managerial capacity as Chairman and CEO of CRC Insurance Services, Inc.; Jane Doe I-V (these names being fictitious as their present identities are unknown); John Doe I-V (these names being fictitious as their present identities are unknown); XYZ Corporation I-V (these names being fictitious as their present identities are unknown), jointly and severally, for harm suffered as a result of defendants' violation of CEPA as follows:

a.  full compensation for back pay and benefits with full remuneration, with interest;

b.  full compensation for front pay and benefits with full remuneration, with interest;

c.  compensatory damages;

d.  consequential damages;

e.  punitive damages;

    f.    his attorneys' fees with appropriate enhancement under <u>Rendine</u> <u>v. Pantzer</u>, 141 N.J. 292 (1995);

    g.    costs of suit;

    h.    pre-judgment interest; and

    i.    such other relief the court may deem equitable and just.

**SECOND COUNT**

**Violation of Public Policy**

**Common Law <u>Pierce</u> Claim**

55.    Plaintiff hereby incorporates each and every allegation of the within paragraphs of this Complaint as if they were fully set forth at length herein.

56.    By and through the actions described above, defendants suspended and terminated plaintiff's employment in violation of a clear mandate of public policy in regards to his resistance, complaints, objection to and/or refusal to engage in acts that he reasonably believed were illegal and/or contrary to various regulatory and/or statutory and/or constituted outright fraudulent and/or unlawful behavior, thereby violating New Jersey Common Law.

57.    As a result of defendants' illegal retaliation, plaintiff has suffered, and continues to suffer, economic loss, harm to career, harm to reputation, bodily injury with physical manifestations, severe emotional distress, and physical pain and suffering, as well as all other such damages compensable at law.

WHEREFORE, plaintiff, William McBurnie, demands judgment against defendants, CRC Insurance Services, Inc.; BB&T Corporation; BB&T Insurance Holdings, Inc.; Branch Banking And Trust Company a/k/a BB&T Bank; John Howard, both individually and in his supervisory and/or managerial capacity as Chairman and

CEO of BB&T Insurance Holdings, Inc.; Samuel Davison Obenauer a/k/a Dave Obenauer, both individually and in his supervisory and/or managerial capacity as Chairman and CEO of CRC Insurance Services, Inc.; Jane Doe I-V (these names being fictitious as their present identities are unknown); John Doe I-V (these names being fictitious as their present identities are unknown); XYZ Corporation I-V (these names being fictitious as their present identities are unknown), jointly and severally, for harm suffered as a result of defendants' illegal retaliation in violation of New Jersey Common Law as follows:

(a)    full compensation for back pay and benefits with full remuneration, with interest;

(b)    full compensation for front pay and benefits with full remuneration, with interest;

(c)    compensatory damages;

(d)    consequential damages;

(e)    punitive damages;

(f)    pre-judgment interest;

(g)    his attorneys' fees and costs with appropriate enhancement under Rendine v. Pantzer, 141 N.J. 292 (1995); and

(h)    such other relief as may be available in which this court deems to be just and equitable.

**THIRD COUNT**

**New Jersey Law Against Discrimination**

**Age Discrimination**

58.   Plaintiff repeats and realleges each and every allegation of the within paragraphs of this complaint as if set forth at length herein.

59.   Plaintiff was a member of a protected class under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD"), because he was 62 at the time of his termination.

60.   Defendants are an "employer" as defined under the LAD.

61.   Plaintiff was unfairly transferred and terminated based upon his age in violation of the LAD in the course of an overt ageist and discriminatory scheme by defendants.

62.   Defendants' reasons for termination are a pretext for age discrimination.

WHEREFORE, plaintiff, William McBurnie, demands judgment against defendants, CRC Insurance Services, Inc.; BB&T Corporation; BB&T Insurance Holdings, Inc.; Branch Banking And Trust Company a/k/a BB&T Bank; John Howard, both individually and in his supervisory and/or managerial capacity as Chairman and CEO of BB&T Insurance Holdings, Inc.; Samuel Davison Obenauer a/k/a Dave Obenauer, both individually and in his supervisory and/or managerial capacity as Chairman and CEO of CRC Insurance Services, Inc.; Jane Doe I-V (these names being fictitious as their present identities are unknown); John Doe I-V (these names being fictitious as their present identities are unknown); XYZ Corporation I-V (these names being fictitious as their present identities are unknown), jointly and severally, for harm suffered as a result of defendant's age discrimination in violation of the LAD as follows:

a.   full compensation for back pay and benefits with full remuneration, with interest;

b.  full compensation for front pay and benefits with full remuneration, with interest;

c.  compensatory damages;

d.  consequential damages;

e.  punitive damages;

f.  pre-judgment interest;

g.  his attorneys' fees and costs with appropriate enhancement under Rendine v. Pantzer, 141 N.J. 292 (1995); and

h.  such other relief as may be available pursuant to the LAD in which this court deems to be just and equitable.

## FOURTH COUNT

### New Jersey Law Against Discrimination

### Unlawful Retaliation

63.  Plaintiff repeats and realleges each and every allegation of the within paragraphs of this Complaint as if set forth at length herein.

64.  As set forth herein, after plaintiff made certain complaints of discrimination, plaintiff's employment was terminated in response to same.

65.  Defendants' conduct towards plaintiff, specifically the termination of his employment, unfair performance criticism and the detrimental work transfer and/or work assignment, constitutes unlawful retaliation in violation of the LAD.

66.  Plaintiff has been severally injured as a result of such retaliation that he has suffered, and continues to suffer, physical and bodily injuries, severe emotional distress, humiliation, embarrassment, anguish, personal hardship, career and social

disruption, psychological and emotional harm, economic losses, lost employment opportunities, and other such damages.

WHEREFORE, plaintiff, William McBurnie, demands judgment against defendants, CRC Insurance Services, Inc.; BB&T Corporation; BB&T Insurance Holdings, Inc.; Branch Banking And Trust Company a/k/a BB&T Bank; John Howard, both individually and In his supervisory and/or managerial capacity as Chairman and CEO of BB&T Insurance Holdings, Inc.; Samuel Davison Obenauer a/k/a Dave Obenauer, both individually and in his supervisory and/or managerial capacity as Chairman and CEO of CRC Insurance Services, Inc.; Jane Doe I-V (these names being fictitious as their present identities are unknown); John Doe I-V (these names being fictitious as their present identities are unknown); XYZ Corporation I-V (these names being fictitious as their present identities are unknown), jointly and severally, for harm suffered as a result of defendants' unlawful retaliation as follows:

(a)     full compensation for back pay and benefits with full remuneration, with interest;

(b)     full compensation for front pay and benefits with full remuneration, with interest;

(c)     compensatory damages;

(d)     consequential damages;

(e)     punitive damages;

(f)     pre-judgment interest;

(g)     attorneys' fees with appropriate enhancement under Rendine v. Pantzer, 141 N.J. 292 (1995); and

(h)    such other relief as may be available pursuant to the LAD in which this court deems to be just and equitable.

## FIFTH COUNT

### Aiding and Abetting Liability

67.    Plaintiff repeats and realleges each and every allegation of the within paragraphs of this complaint as if set forth at length herein.

68.    Defendants, by their actions and inactions, condone, and ratified and aided and abided each others' discrimination, harassment and/or retaliation perpetrated against plaintiff.    Defendants had knowledge that discrimination, harassment and/or retaliation was occurring, had knowledge that discrimination, harassment and/or retaliation was a violation of the law, and substantially encouraged and/or assisted in same.

69.    The conduct engaged in by defendants constitutes egregious behavior and/or willful indifference by upper management to the rights of plaintiff sufficient to subject defendants to punitive damages under the LAD.

70.    Plaintiff has been severely injured as a result of such discrimination, retaliation and/or harassment that he has suffered, and continues to suffer, physical and bodily injuries, severe emotional distress, humiliation, embarrassment, anguish, personal hardship, career and social disruption, psychological and emotional harm, economic losses, loss employment opportunities, and other such damages.

WHEREFORE, plaintiff, William McBurnie, demands judgment against defendants, CRC Insurance Services, Inc.; BB&T Corporation; BB&T Insurance Holdings, Inc.; Branch Banking And Trust Company a/k/a BB&T Bank; John Howard, both individually and in his supervisory and/or managerial capacity as Chairman and

CEO of BB&T Insurance Holdings, Inc.; Samuel Davison Obenauer a/k/a Dave Obenauer, both individually and in his supervisory and/or managerial capacity as Chairman and CEO of CRC Insurance Services, Inc.; Jane Doe I-V (these names being fictitious as their present identities are unknown); John Doe I-V (these names being fictitious as their present identities are unknown) and XYZ Corporation I-V (these names being fictitious as their present identities are unknown), jointly and severally, for harm suffered as a result of defendants' aiding and abetting discrimination, harassment and retaliation under the LAD and CEPA as follows:

    (a)    full compensation for back pay and benefits with full remuneration, with interest;

    (b)    full compensation for front pay and benefits with full remuneration, with interest;

    (c)    compensatory damages;

    (d)    consequential damages;

    (e)    punitive damages;

    (f)    pre-judgment interest;

    (g)    attorneys' fees with appropriate enhancement under Rendine v. Pantzer, 141 N.J. 292 (1995); and

    (h)    such other relief as may be available pursuant to the LAD in which this court deems to be just and equitable.

O'CONNOR, PARSONS, LANE & NOBLE, LLC
Attorneys for Plaintiff

By: _____
        GREGORY B. NOBLE

Dated:  October 1, 2019

## JURY DEMAND

Plaintiffs demand a trial by jury as to all issues.

O'CONNOR, PARSONS, LANE & NOBLE, LLC
Attorneys for Plaintiff

By:_____
GREGORY B. NOBLE

Dated: October 1, 2019

## DESIGNATION OF TRIAL COUNSEL

Please take notice that pursuant to Rule 4:25-4, Gregory B. Noble, Esq. is hereby designated as trial counsel in the within matter.

## CERTIFICATION PURSUANT TO RULE 4:5-1

The undersigned, Gregory B. Noble, certifies on behalf of the plaintiff as follows:

1.     I am an attorney admitted to practice law in the State of New Jersey, counsel for the above-named plaintiff in the subject action.

2.     The matter in controversy in this case is not, to my knowledge, the subject of any other action pending in any court or pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated.

3.     There are no other parties who should be joined in this action that we are aware of at the present time.

I hereby certify that the foregoing statements made by me are true.   I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

O'CONNOR, PARSONS, LANE & NOBLE, LLC
Attorneys for Plaintiff

By:_____
GREGORY B. NOBLE

Dated: October 1, 2019

# Civil Case Information Statement

**Case Details: MONMOUTH | Civil Part Docket# L-003495-19**

**Case Caption: WILLIAM MCBURNIE  VS CRC INSURANCE SERVIC ES. IN**

**Case Initiation Date:** 10/01/2019

**Attorney Name:** GREGORY BRIAN NOBLE

**Firm Name:** O'CONNOR PARSONS LANE & NOBLE LLC

**Address:** 959 SOUTH SPRINGFIELD AVENUE. 2ND FL SPRINGFIELD NJ 07081

**Phone:** 9089289200

**Name of Party:** PLAINTIFF : William McBurnie

**Name of Defendant's Primary Insurance Company (if known):** None

**Case Type:** WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA)

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

Do parties have a current, past, or recurrent relationship? NO

If yes, is that relationship:

Does the statute governing this case provide for payment of fees by the losing party? YES

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:

Do you or your client need any disability accommodations? NO
 If yes, please identify the requested accommodation:

Will an interpreter be needed? NO
 If yes, for what language:

Please check off each applicable category: Putative Class Action? NO    Title 59? NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

__10/01/2019__
Dated

__/s/ GREGORY BRIAN NOBLE__
Signed

MONMOUTH COUNTY
SUPERIOR COURT
PO BOX 1269
FREEHOLD        NJ 07728

                          TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (732) 358-8700
COURT HOURS  8:30 AM - 4:30 PM

                DATE:    OCTOBER 01, 2019
                RE:      WILLIAM MCBURNIE    VS CRC INSURANCE SERVIC ES, IN
                DOCKET: MON L -003495 19

   THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

   DISCOVERY IS    450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

   THE PRETRIAL JUDGE ASSIGNED IS:  HON KATHLEEN A. SHEEDY

   IF YOU HAVE ANY QUESTIONS, CONTACT TEAM       003
AT:  (732) 358-8700.

   IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
        PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                ATTENTION:

                        ATT: GREGORY B. NOBLE
                        O'CONNOR PARSONS LANE & NOBLE
                        959 SOUTH SPRINGFIELD AVENUE, 2ND FL
                        SPRINGFIELD       NJ 07081

ECOURTS

**O'CONNOR, PARSONS, LANE & NOBLE, LLC**
Gregory B. Noble, Esq. (#017601998)
R. Daniel Bause, Esq. (#019122011)
Robert A. Ballard, III, Esq. (#087192014)
959 South Springfield Avenue, 2nd Floor
Springfield, New Jersey 07081
Phone: 908-928-9200
Attorneys for Plaintiff

| | |
|---|---|
| WILLIAM MCBURNIE,<br>    Plaintiff,<br><br>v.<br><br>CRC INSURANCE SERVICES, INC.;<br>BB&T CORPORATION; BB&T<br>INSURANCE HOLDINGS, INC.;<br>BRANCH BANKING AND TRUST<br>COMPANY a/k/a BB&T BANK; JOHN<br>HOWARD, both individually and in his<br>supervisory and/or managerial capacity<br>as Chairman and CEO of BB&T<br>Insurance Holdings, Inc.; SAMUEL<br>DAVISON OBENAUER a/k/a DAVE<br>OBENAUER, both individually and in<br>his supervisory and/or managerial<br>capacity as Chairman and CEO of CRC<br>Insurance Services, Inc.; JANE DOE I-V<br>(these names being fictitious as their<br>present identities are unknown); JOHN<br>DOE I-V (these names being fictitious<br>as their present identities are unknown);<br>XYZ CORPORATION I-V (these names<br>being fictitious as their present identities<br>are unknown),<br>        Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MONMOUTH COUNTY<br>DOCKET NO:  MON-L-3495-19<br><br>Civil Action<br><br>**PLAINTIFF'S FIRST REQUEST FOR<br>ANSWERS TO INTERROGATORIES** |

COUNSEL:

PLEASE TAKE NOTICE that plaintiffs require of defendant answers under oath

or certification to the following interrogatories within the time prescribed by law.

## INSTRUCTIONS

In responding to these interrogatories, furnish all information available to defendant, including information in the possession of defendant's attorneys, investigators, and all other persons acting on defendants' behalf, and not merely such information that is within defendants' personal knowledge.

Defendant and defendant's attorneys are required to supplement promptly the answers to these interrogatories as new information comes to their attention.

As used herein, the term "person" means natural persons, corporations, partnerships, sole proprietorships, unions, associations, or any other kind of entity.

As used herein, a "document" means any handwritten, printed, typewritten, recorded, electro-magnetic, graphic or photographic matter, however produced or reproduced, including, but not limited to:  contracts; agreements; correspondence; telegrams; teletype; memoranda; drafts; records; reports; computer printouts and/or records; communications; notes; stenographic or handwritten notices; analyses; work papers; notices; orders; bill or invoices; announcements; instruments; minutes; transcripts of conversations or meetings; summaries; agenda; calendars; diaries; files; maps; drawings; graphs; charts; blue-prints; journals; books of account; ledgers; checks; receipts; books; studies; manuals; brochures; pamphlets; bulletins; schedules; periodicals; newspapers; price lists; photographs; tape recordings; and any other writings.  "Documents" refers to the original; or identical copy where the original is unavailable; and any non-identical copy (where it differs from the original in any respect because of alterations, notes comments, attachments, or otherwise).

"Communication" means any contact, whether in person, in writing, by telephone, or any other method whereby knowledge, facts or information is transmitted

from one person or entity to another, or to a file.

In each interrogatory wherein defendant is asked to "identify" a person, state (i) his or her full name; (ii) present or last known home address; (iii) present or last known position and business affiliation; and (iv) position, business affiliation, and job description at the time relevant to the Interrogatory involved.

In each interrogatory wherein defendant is asked to "identify" and/or "describe" any document, state (i) the date; (ii) author or preparer; (iii) addressee(s) or recipient(s); (iv) the type of document (e.g., letter) or some other means of describing it; (v) a summary of its contents with reasonable particularity sufficient for a specific demand for production; (vi) the present address where it is kept, if known, and if not known, the last address known and information as to its disposition, and the names and address of the person who has possession or control.   Documents to be identified shall include both documents in your possession, custody and control and all other documents of which you have knowledge.

For the purpose of these interrogatories, unless otherwise specified, the period for which answers are requested is  January 1, 1975 to the present.

"Relating to" shall be construed in the broadest sense to require information which pertains to, evidences, contains , reflects, discloses, describes, explains, summarizes, concerns or refers to, whether directly or indirectly, the subject of the Interrogatory.

The term "person" shall mean the plural as well as the singular and includes any legal entity, including natural person acting as individuals or in a collegial capacity (e.g., a committee or board of directors), firms, proprietorships, corporations, businesses or any other form of public or private organization or entity.

"Plaintiff(s)" shall mean WILLIAM MCBURNIE.

"Defendant(s)", "You", the "Company" and/or "your" shall mean CRC INSURANCE SERVICES, INC.; BB&T CORPORATION; BB&T INSURANCE HOLDINGS, INC.; BRANCH BANKING AND TRUST COMPANY a/k/a BB&T BANK; JOHN HOWARD, both individually and in his supervisory and/or managerial capacity as Chairman and CEO of BB&T Insurance Holdings, Inc.; SAMUEL DAVISON OBENAUER a/k/a DAVE OBENAUER, both individually and in his supervisory and/or managerial capacity as Chairman and CEO of CRC Insurance Services, Inc.; JANE DOE I-V (these names being fictitious as their present identities are unknown); JOHN DOE I-V (these names being fictitious as their present identities are unknown); XYZ CORPORATION I-V (these names being fictitious as their present identities are unknown).

If defendant claims a privilege with regard to any information or document requested herein, state the nature of the privilege claimed and provide the specific factual basis for asserting the privilege as to the particular information or document at issue.

O'CONNOR, PARSONS, LANE & NOBLE, LLC
Attorneys for Plaintiff

By: _____
GREGORY B. NOBLE

Dated: October 8, 2019

## INTERROGATORIES

1.    State the name, last known address, and last known telephone number of all persons who have knowledge of facts relating in any way to this matter, and specify the subject matter of each such person's knowledge.

2.    List chronologically each job title held by plaintiff while employed by defendant, indicating the time period during which each position was held.

3.    For any position held by plaintiff while employed by defendant for which there is no job description, describe with specificity the job functions of each such position.

4.    State the required qualifications and skills for each and every job title that plaintiff held while employed by defendant.

5.    State whether plaintiff was ever promoted while employed by defendant.   For each promotion, state the following:

       a.    from what position or job title plaintiff was promoted and to what position or job title plaintiff was promoted;

       b.    the date of the promotion;

       c.    the reason(s) for the promotion;

      d.   the names, last known addresses, last known telephone numbers, and job titles, of all persons involved in the decision-making process and the nature and extent of their involvement in the decision;

      e.   the criteria used in making the decision; and

      f.   identify all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory.

6.   State whether plaintiff was ever demoted while employed by defendant. For each demotion, state the following:

      a.  from what position or job title plaintiff was demoted and to what position or job title plaintiff was demoted;

      b.  the date of the demotion;

      c.  the reason(s) for the demotion;

      d.  the names, last known addresses, last known telephone numbers, and job titles, of all persons involved in the decision-making process and the nature and extent of their involvement in the decision;

      e.  the criteria used in making the decision; and

      f.  identify all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory

7.   Specify the form and substance of any and all compensation that defendant provided to plaintiff (including but not limited to salary, wages, bonuses, commissions, employee benefits, and retirement benefits) for each year of plaintiff's employment.

8.      Specify the form and substance of any and all compensation that defendant provided to employees, other than plaintiff, with similar job titles or job descriptions (including but not limited to salary, wages, bonuses, commissions, employee benefits, and retirement benefits) for each year in which plaintiff was employed.

9.      (a)      Set forth in full and complete detail and without reference to any pleading all admissions or statements against interest which you contend that any party to this litigation has made in connection with the subject matter of this litigation, including:

(i) The identity of the person making same;
(ii) The precise date thereof;
(iii) The full substance thereof;

(b) Identify all persons with knowledge of the facts set forth in the answer to this Interrogatory and set forth the general substance of each person's knowledge and;

(c)      Identify all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory.

10.      Set forth the complete factual basis for each and every defense asserted by defendant.

11.      Set forth the complete factual basis for each and every counterclaim asserted by defendant.

12.    If defendant contends that any damages were suffered as a result of the allegations that form the basis of the counterclaims, set forth with particularity the nature and amount of each element of those damages, as well as each and every fact in support of those damages.

13.    State whether any internal complaints were received by defendant from plaintiff reflecting, referring or relating to retaliatory termination, retaliatory discipline and/or any other response related to protected employee activity and/or whistleblowing and/or age discrimination during the period January 1, 1975 to the present.  If so, state the following:

      a.    Describe in detail all such complaints, the date received and by whom, identify all persons involved in making, processing and/or resolving same, and the disposition thereof.

      b.    Identify all persons with knowledge of the facts set forth in the answer to this Interrogatory and set forth the general substance of each person's knowledge; and

      c.    Identify all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory.

14.    State whether defendant investigated plaintiffs' claims at any point prior to this litigation.  If so, provide the following:

      a.    the name, last known address, last known telephone number, and job title, of each individual who conducted or participated in the investigation;

      b.    all findings or conclusions of the investigation;

      c.    the time period during which the investigation occurred;

      d.    a description of all actions taken as a result of the investigation;

and

e.   identify all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory

15.   State whether any person other than plaintiff has ever accused defendants of retaliatory termination, retaliatory discipline and/or any other response related to protected employee activity and/or whistleblowing and/or age discrimination.   If so, state the following:

a.   the name, last known address, last known telephone number, and race of each such complainant;

b.   the name, address, and telephone number of the employer for whom the complainant was working when the alleged incident occurred;

c.   the date of each such complaint;

d.   the nature and substance of each such complaint;

e.   the name, last known address, last known telephone number, and job title to whom the complaint was made; and

f.   identify all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory.

16.   State whether any civil or criminal action has ever been filed in any court, the United States Equal Employment Opportunity Commission, the New Jersey Division on Civil Rights, or any other federal, state or local governmental agency charging defendant with retaliatory termination, retaliatory discipline and/or any other response related to protected employee activity and/or whistleblowing, age discrimination and/or any other violation of the Conscientious Employee Protection Act ("CEPA") and/or the New Jersey Law Against Discrimination ("LAD").   If so,

provide the following for each such action:

    a. the name, last known address, last known telephone number, and job title of the complainant(s);

    b. the title of the action;

    c. the name and address of the court where the action was filed;

    d. the docket number of the action;

    e. the date on which the action was filed;

    f. the nature and substance of the action;

    g. the disposition or present status of the action;

    h. whether the case was tried and, if so, the verdict;

    i. the amount of punitive damages, if any;

    j. the amount of compensatory damages, if any; and

    k. identify all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory.

    17.    State whether any written or verbal internal complaints were received by defendants from plaintiff reflecting, referring or relating to potential fraud and/or illegal or unlawful activity, acts contrary to various statutory and/or regulatory authority, up to and including violations or potential violations of the New Jersey Law Against Discrimination, acts which constituted outright fraudulent and/or unlawful behavior, illegal, fraudulent, unethical and/or criminal activity, up to and including grand larceny, criminal fraud, wire fraud, racketeering and antitrust violations under both federal and state laws, including violations of Sections 155 and 190 of the New York Penal Law and of 18 U.S.C. § 1343 and/or any other conditions or actions at defendants' locations at any time from January 1, 1975 to the present.   If so, state the following:

    a.    Describe in detail all such complaints, the date received and by whom, identify all persons involved in making, processing and/or resolving same, and the disposition thereof.

   b. Identify all persons with knowledge of the facts set forth in the answer to this Interrogatory and set forth the general substance of each person's knowledge; and

   c. Identify all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory.

  18. State whether any complaints were filed by plaintiff with any outside agency against defendant regarding potential fraud and/or illegal or unlawful activity, acts contrary to various statutory and/or regulatory authority, up to and including violations or potential violations of the New Jersey Law Against Discrimination, acts which constituted outright fraudulent and/or unlawful behavior, illegal, fraudulent, unethical and/or criminal activity, up to and including grand larceny, criminal fraud, wire fraud, racketeering and antitrust violations under both federal and state laws, including violations of Sections 155 and 190 of the New York Penal Law and of 18 U.S.C. § 1343 and/or any other conditions or actions at defendants' locations at any time during the period January 1, 1975 to the present. If so, state the following:

   a. Describe in detail all such complaints, the date received and by whom, identify all persons involved in making, processing and/or resolving same, and the disposition thereof.

   b. Identify all persons with knowledge of the facts set forth in the answer to this Interrogatory and set forth the general substance of each person's knowledge; and

   c. Identify all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory.

19.    State whether defendant has been cited for violations by any agency regarding fraud and/or illegal or unlawful activity, acts contrary to various statutory and/or regulatory authority, up to and including violations or potential violations of the New Jersey Law Against Discrimination, acts which constituted outright fraudulent and/or unlawful behavior, illegal, fraudulent, unethical and/or criminal activity, up to and including grand larceny, criminal fraud, wire fraud, racketeering and antitrust violations under both federal and state laws, including violations of Sections 155 and 190 of the New York Penal Law and of 18 U.S.C. § 1343 and/or any other conditions or actions at defendants' locations at any time during the period from January 1, 1975 to the present.    If so, state the following:

        a.    Describe in detail all such citations, the date issued and by whom, identify all persons involved in making, processing and/or resolving same, and the disposition thereof.

        b.    Identify all persons with knowledge of the facts set forth in the answer to this Interrogatory and set forth the general substance of each person's knowledge; and

        c.    Identify all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory.

20.    State whether defendant maintains a system or procedure for recording, investigating, and/or resolving employee complaints of fraud and/or illegal or unlawful activity, acts contrary to various statutory and/or regulatory authority, up to and including violations or potential violations of the New Jersey Law Against Discrimination, acts which constituted outright fraudulent and/or unlawful behavior, illegal, fraudulent, unethical and/or criminal activity, up to and including grand larceny, criminal fraud, wire fraud, racketeering and antitrust violations under both federal and state laws, including violations of Sections 155 and 190 of the New York Penal Law and of 18 U.S.C. § 1343 and/or any other conditions or actions at defendants' locations.    If so:

        (a)    provide a description of the system(s) or procedure(s) used since January 1, 1975; and

        (b)    identify all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory.

21.    Identify each individual who has had authority to control plaintiff's work environment at any time from January 1, 1975 to the present.

22.    State whether defendant maintains a system or procedure for recording, investigating, and/or resolving employee complaints of retaliatory termination, retaliatory discipline and/or any other response related to protected employee activity and/or whistleblowing, age discrimination and/or any other violations of the Conscientious Employee Protection Act ("CEPA") and/or the New Jersey Law Against Discrimination ("LAD").   If so:

    (c)    provide a description of the system(s) or procedure(s) used since January 1, 1975; and

    (d)    identify all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory.

23.    State whether at any time from January 1, 1975 to the present, defendant had any policy procedure, training program, and/or manual or handbook referring, reflecting and/or relating to retaliatory termination, retaliatory discipline and/or any other response related to protected employee activity and/or whistleblowing, age discrimination, the Conscientious Employee Protection Act ("CEPA") and/or the New Jersey Law Against Discrimination ("LAD").

    (a)    If so, set forth in detail the substance of each such policy, procedure, training program, manual and/or handbook, the dates when any or all were promulgated and in effect, and whether any were oral or in writing.   If oral, set for the full substance thereof; if written, attach copies hereto.

    (b)    Identify all persons involved in promulgating, monitoring and/or supervising same.

    (c)    If you contend that any such policies, programs and/or procedures were followed in the case of any plaintiff, set forth the full reasons for such contention and identify all persons involved.

        (d)   If said policies, programs and/or procedures were not followed in the case of any plaintiff, set forth the full reasons therefore and identify all persons involved.

        (e)   Identify all persons with knowledge of the facts set forth in the answer to this Interrogatory and set forth the general substance of each person's knowledge.

        (f)   Identify all documents that in any way touch upon, discuss or pertain to any of the matters referred to in this Interrogatory.

    24.   Identify all members of defendant's litigation control group and, as to each member, state:

        (a)   the individual's full name;

        (b)   job title; and

        (c)   whether the member is a current or former agent or employee of defendants.

    25.   State whether defendant has insurance that may cover any recovery by plaintiff or defense against plaintiff's claims, and if so, specify the name of the insurance carrier and the nature and amount of coverage.

26.     State the names and addresses of any and all proposed expert witnesses whom defendant has retained for this matter.

27.     With respect to each proposed expert witness referred to in the preceding interrogatory, provide the following:

     a.     field of expertise;

     b.     educational background;

     c.     the names of any and all books, periodicals, or other writings that he or she has written or to which he or she has contributed;

     d.     the date, time, and place at which any oral opinion was rendered, specifying to whom that opinion was rendered and describing the content of that opinion;

     e.     true and accurate copies of any and all written reports or opinions, including drafts;

     f.     the name, last known address, last known telephone number, job title, and current employer of each person with whom the expert has met in connection with formulating his or her opinion or preparing his or her report(s); and

     g.     true and accurate copies of any and all documents that the expert created, obtained, or reviewed in connection with the formulation of his or her opinion or the preparation of his or her report(s).

28.    State whether defendant and/or defendant's agents have any written statements from any potential witness in this matter.

29.    State whether defendant and/or defendant's agents communicated with any persons or entities that are not parties to this litigation in connection with the subject matter of this lawsuit.   For all such communications that were oral, specify the nature and substance of the communication, the date on which it occurred, the place at which it occurred, and the names, last known addresses, and last known telephone numbers of all persons present.   For all such communications that were written, provide true and accurate copies of each such communication.

30.    Specify the gross income or revenue and net worth of defendant for each year from 2009 to the present.

31.    If defendant claims that any document requested in any of plaintiff's interrogatories or document requests is protected from discovery by an evidentiary privilege, specify the title of the document, the date on which it was created and/or distributed, its author(s), its recipient(s), its purpose(s), the circumstances under which it was created and/or distributed, and the basis for the claim of privilege.

32.    Set forth whether you either destroyed or disposed of any documents that in any way touch upon, discuss or pertain to any matters relating to this suit.

If "yes," (i) identify each document; (ii) state when it was destroyed or disposed of; and (iii) identify the person who authorized or ordered the destruction.

33.    Identify the person or persons answering each of these Interrogatories. State whether the facts set forth in the answers are based on personal knowledge. If not based on personal knowledge, set forth the sources of information and belief.

34.    Identify each person who assisted or participated in preparing and/or supplying any of the information given in answer to or relied in answering these Interrogatories.

35.    Indicate whether the individual certifying these interrogatory answers had the opportunity to review the typed responses.

36.    Identify each individual responsible for processing, evaluating and/or investigating claims of employee complaints of potential fraud and/or illegal or unlawful activity, acts contrary to various statutory and/or regulatory authority, up to and including violations or potential violations of the New Jersey Law Against Discrimination, acts which constituted outright fraudulent and/or unlawful behavior, illegal, fraudulent, unethical and/or criminal activity, up to and including grand

larceny, criminal fraud, wire fraud, racketeering and antitrust violations under both federal and state laws, including violations of Sections 155 and 190 of the New York Penal Law and of 18 U.S.C. § 1343 and/or any other conditions or actions at defendants' locations, including, but not limited to, individual members of defendant's human resources department or other departments. As to each such person, identify the role he/she held.

37.    Identify any and all individuals hired, promoted and/or otherwise reassigned by defendants, including those hired, promoted and/or otherwise reassigned to replace plaintiff and/or perform his/her job functions, from the time defendant terminated plaintiff's employment to the present time, including the position for which they were hired, their age, their gender and their race.

38.    Identify any and all persons who made the decision, were consulted about and/or were involved in any way in the decision to terminate plaintiff. As to each such person, describe the role he/she played in the decision to terminate plaintiff, identify the dates on which such person engaged in any meeting or conversation regarding the termination of plaintiff, identify the persons with whom such meetings or conversations occurred, and describe the content of such meetings or conversations.

## CERTIFICATION

I certify that the foregoing statements made by me are true.   I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

I certify that all copies of documents submitted in response to these interrogatories are true and accurate copies of the original documents.

I certify that in responding to the foregoing interrogatories, I have furnished all information and all documents available to me and my agents and attorneys.

_____

*Dated*:

**O'CONNOR, PARSONS, LANE & NOBLE, LLC**
Gregory B. Noble, Esq. (#017601998)
R. Daniel Bause, Esq. (#019122011)
Robert A. Ballard, III, Esq. (#087192014)
959 South Springfield Avenue, 2nd Floor
Springfield, New Jersey 07081
Phone: 908-928-9200
Attorneys for Plaintiff

| | |
|---|---|
| WILLIAM MCBURNIE,<br>Plaintiff,<br><br>v.<br><br>CRC INSURANCE SERVICES, INC.;<br>BB&T CORPORATION; BB&T<br>INSURANCE HOLDINGS, INC.;<br>BRANCH BANKING AND TRUST<br>COMPANY a/k/a BB&T BANK; JOHN<br>HOWARD, both individually and in his<br>supervisory and/or managerial capacity<br>as Chairman and CEO of BB&T<br>Insurance Holdings, Inc.; SAMUEL<br>DAVISON OBENAUER a/k/a DAVE<br>OBENAUER, both individually and in<br>his supervisory and/or managerial<br>capacity as Chairman and CEO of CRC<br>Insurance Services, Inc.; JANE DOE I-V<br>(these names being fictitious as their<br>present identities are unknown); JOHN<br>DOE I-V (these names being fictitious<br>as their present identities are unknown);<br>XYZ CORPORATION I-V (these names<br>being fictitious as their present identities<br>are unknown),<br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MONMOUTH COUNTY<br>DOCKET NO:   MON-L-3495-19<br><br>Civil Action<br><br>**PLAINTIFF'S FIRST REQUEST FOR<br>PRODUCTION OF DOCUMENTS** |

## INSTRUCTIONS

"Documents" means, without limitation, any handwritten, printed, typewritten, recorded, Electro-magnetic, graphic or photographic matter, however produced or reproduced, including, but not limited to: contracts; agreements; correspondence; telegrams; teletype; memoranda; e-mails; drafts; records; reports; computer printouts, records and/or disks; communications; notes; stenographic or handwritten notices; analyses; work papers; notices; orders; bill or invoices; announcements; instruments;

minutes; transcripts of conversations or meetings, summaries; agenda; calendars; diaries; files; maps; drawings; graphs; charts; blueprints; journals; books of account; ledgers; checks; receipts; books; studies; manuals; brochures; pamphlets; bulletins; schedules; periodicals; newspapers; price lists; photographs; tape recordings; voice mails; and any other writings. "Documents" refers to the original; or identical copy where the original is unavailable; and any non-identical copy (where it differs from the original in any respect because of alterations, notes comments, attachments, or otherwise).

"Communication" means any contact, whether in person, in writing, by telephone, or any other method whereby knowledge, facts, or information is transmitted from one person or entity to another, or to a file.

"Identify" or "Identity":

(a) When referring to a person, means to state: (i) his or her full name; (ii) present or last known home address; (iii) present or last known position and business affiliation; and (iv) position, business affiliation, and job description at the time relevant to the involved demand.

(b) When referring to a document, means to state: (i) the date; (ii) author or preparer; (iii) addressee(s) or recipients; (iv) the type of document (e.g., letter) or some other means of describing it; (v) a summary of its contents with reasonable particularity sufficient for a specific demand for production; (vi) the present address where it is kept, if known, and if not known, the last address known and information as to tits disposition, and the name and address of the person who has possession or control. Documents to be identified shall include both documents in your possession, custody and control and all other documents of which you have knowledge.

(c) When referring to a corporation, means to state its legal name; the name(s) under which it does business; the state or country of incorporation; the date of incorporation; if not a New Jersey corporation, the date authorized to do business in New Jersey; whether it is now in good standing; if not in good standing, how and when dissolved or forfeited; its principal office; the nature of the business in which it is engaged; the name and address of its directors and officers at the times relevant to this case and presently; and its relationship, if any, to any of the parties to this case.

(d) When referring to a partnership, means to state its legal name; the name(s) under which it does business; the state of its formation; the date of formation; if not a New Jersey partnership, the date authorized to do business in the State; whether it is now in good standing, if not in good standing, how and when dissolved or forfeited; the address of its principal office; the nature of the business in which it is engaged; the names and addresses of the partners at all times relevant to this case and presently; and its relationship, if any to any of the parties to this case.

(e) When referring to an oral communication, means to state: (i) when and where it was mad; (ii) the identity of each person making the oral communications, each person to whom the oral communication was made, and each other person present; (iii) the means of communication (e.g., face-to-face meeting, telephone); (iv) a precise and complete description of the substance of each communication; and (v) the identity of all documents referred to in the course of the oral communication.

(f) When referring to an expert, means to state: (i) his or her field(s) of expertise; (ii) his or her qualifications, including, without limitation, all formal or specialized training in his or her field(s) of expertise, membership in any professional

or trade associations in his or her field(s) of expertise, and his or her professional experience in his or her field(s) of expertise; (iii) the title and full citation of each of his or her published books and articles; and (iv) attach all curriculum vitae of said expert.

"Plaintiff(s)" shall mean WILLIAM MCBURNIE.

"Defendant(s)", "You", the "Company" and/or "your" shall mean CRC INSURANCE SERVICES, INC.; BB&T CORPORATION; BB&T INSURANCE HOLDINGS, INC.; BRANCH BANKING AND TRUST COMPANY a/k/a BB&T BANK; JOHN HOWARD, both individually and in his supervisory and/or managerial capacity as Chairman and CEO of BB&T Insurance Holdings, Inc.; SAMUEL DAVISON OBENAUER a/k/a DAVE OBENAUER, both individually and in his supervisory and/or managerial capacity as Chairman and CEO of CRC Insurance Services, Inc.; JANE DOE I-V (these names being fictitious as their present identities are unknown); JOHN DOE I-V (these names being fictitious as their present identities are unknown); XYZ CORPORATION I-V (these names being fictitious as their present identities are unknown).

"Relating to" shall be construed in the broadest sense  to require information which pertains to, evidences, contains, reflects, discloses, describes, explains, summarizes, concerns or refers to, whether directly or indirectly, the subject of the request.

The term "person" shall mean the plural as well as the singular and includes any legal entity, including natural persons acting as individuals or in a collegial capacity (e.g., a committee or board of directors), firms, proprietorships, corporations, businesses or any other form of public or private organization or entity.

For the purposes of this First Request for Production of Documents, unless otherwise specified, the period for which documents are requested is January 1, 1975 through the present.

You shall label each of the documents or group of documents produced in response to this request for production of documents with the number of each paragraph hereof in response to which it is produced.

Each request for documents herein shall be deemed continuing as to require prompt supplemental responses if defendants obtain or discover further documents called for herein between the time of responding to this request and the trial of this action.

Each document shall be produced as kept in the usual course of business and shall be produced with its file folder and in such a fashion to show the identity of the file or location in which such document was located.


O'CONNOR, PARSONS, LANE & NOBLE, LLC
Attorneys for Plaintiff


By:_____
R. DANIEL BAUSE

Dated:

## REQUEST FOR DOCUMENTS

The following documents are hereby requested:

1. All documents reflecting, referring or relating to plaintiff.

2. Any and all job descriptions for each position held by plaintiff while employed by defendant.

3. Any and all organizational charts that depict the organization in which plaintiff was employed at any and all times that plaintiff was employed by defendant.

4. Any and all employment policy manuals or employment handbooks that were in effect at any and all times during plaintiff's employment by defendant.

5. Any and all files kept by defendant regarding plaintiff, including but not limited to plaintiff's entire personnel file.

6. Any and all documents relating in any way to any and all personnel actions regarding plaintiff.

7. Any and all evaluations of plaintiff's job performance while employed by defendant.

8. Any and all documents relating in any way to any and all awards or other commendations given to plaintiff while employed by defendant.

9. Any and all attendance records or work schedules regarding plaintiff's employment by defendant.

10. Any and all documents relating in any way to any and all internal complaints of retaliatory termination, retaliatory discipline and/or any other response related to protected employee activity and/or whistleblowing and/or age discrimination made by plaintiff while employed by defendant.

11. Any and all documents relating in any way to any and all investigations of plaintiff's claims conducted by defendants prior to this litigation.

12. Any and all documents relating in any way to any and all accusations of retaliatory termination, retaliatory discipline and/or any other response related to protected employee activity and/or whistleblowing and/or age discrimination made by any person other than plaintiff against defendant.

13. Any and all documents relating in any way to any and all complaints filed with any court, the United States Equal Employment Opportunity Commission, the New Jersey Division on Civil Rights, or any other federal, state or local governmental agency charging defendant with retaliatory termination, retaliatory discipline and/or any other response related to protected employee activity and/or whistleblowing, age discrimination and/or any other violation of the Conscientious Employee Protection Act ("CEPA") and/or the New Jersey Law Against Discrimination ("LAD").

14. Any and all defendant policies referring, reflecting and/or relating to retaliatory termination, retaliatory discipline, any other response related to protected employee activity and/or whistleblowing, age discrimination, the Conscientious Employee Protection Act ("CEPA") and/or the New Jersey Law Against Discrimination ("LAD").

15. Any and all documents relating in any way to any and all systems or procedures that defendant maintained for reporting, investigating, and resolving employee complaints of retaliatory termination, retaliatory discipline, any other response related to protected employee activity and/or whistleblowing and/or age discrimination during the time period that plaintiffs were employed by defendant.

16. Any and all documents relating in any way to any and all education or training regarding retaliatory termination, retaliatory discipline, any other response related to protected employee activity and/or whistleblowing, age discrimination, the Conscientious Employee Protection Act ("CEPA") and/or the New Jersey Law Against Discrimination ("LAD") that defendant conducted during the time period that plaintiff was employed by defendants.

17. Any and all documents relating in any way to any and all education, training, system and/or procedure regarding potential fraud and/or illegal or unlawful activity, acts contrary to various statutory and/or regulatory authority, up to and including violations or potential violations of the New Jersey Law Against Discrimination, acts which constituted outright fraudulent and/or unlawful behavior, illegal, fraudulent, unethical and/or criminal activity, up to and including grand larceny, criminal fraud, wire fraud, racketeering and antitrust violations under both federal and state laws, including violations of Sections 155 and 190 of the New York Penal Law and of 18 U.S.C. § 1343 and/or any other conditions or actions at defendants' locations that defendants conducted and/or maintained during the time period that plaintiff was employed by defendants.

18. Any and all documents relating in any way to any and all complaints made by plaintiff to defendant reflecting, referring or relating to potential fraud and/or illegal or unlawful activity, acts contrary to various statutory and/or regulatory authority, up to and including violations or potential violations of the New Jersey Law Against Discrimination, acts which constituted outright fraudulent and/or unlawful behavior, illegal, fraudulent, unethical and/or criminal activity, up to and including grand larceny, criminal fraud, wire fraud, racketeering and antitrust violations under both federal and state laws, including violations of Sections 155 and 190 of the New York Penal Law and of 18 U.S.C. § 1343 and/or any other conditions or actions at defendants' locations at any time from January 1, 1975 to the present.

19. Any and all documents relating in any way to any and all complaints filed by plaintiff with any outside agency against defendant concerning potential fraud and/or illegal or unlawful activity, acts contrary to various statutory and/or regulatory authority, up to and including violations or potential violations of the New Jersey Law Against Discrimination, acts which constituted outright fraudulent and/or unlawful behavior, illegal, fraudulent, unethical and/or criminal activity, up to and including grand larceny, criminal fraud, wire fraud, racketeering and antitrust violations under both federal and state laws, including violations of Sections 155 and 190 of the New York Penal Law and of 18 U.S.C. § 1343 and/or any other conditions or actions at defendants' locations at any time during the period January 1, 1975 to the present.

20. Any and all documents relating in any way to any and all citations or violations issued by any outside agency against defendant regarding potential fraud and/or illegal or unlawful activity, acts contrary to various statutory and/or regulatory authority, up to and including violations or potential violations of the New Jersey Law Against Discrimination, acts which constituted outright fraudulent and/or unlawful behavior, illegal, fraudulent, unethical and/or criminal activity, up to and including grand larceny, criminal fraud, wire fraud, racketeering and antitrust violations under both federal and state laws, including violations of Sections 155 and 190 of the New York Penal Law and of 18 U.S.C. § 1343 and/or any other conditions or actions at defendants' locations at any time during the period from January 1, 1975 to the present.

21. Any and all documents relating to any system or procedure maintained by defendant for recording, investigating, and/or resolving employee complaints of potential fraud and/or illegal or unlawful activity, acts contrary to various statutory and/or regulatory authority, up to and including violations or potential violations of the New Jersey Law Against Discrimination, acts which constituted outright fraudulent and/or unlawful behavior, illegal, fraudulent, unethical and/or criminal activity, up to and including grand larceny, criminal fraud, wire fraud, racketeering and antitrust violations under both federal and state laws, including violations of Sections 155 and 190 of the New York Penal Law and of 18 U.S.C. § 1343 and/or any other conditions or actions at defendants' locations.

22. Any and all files kept by defendant regarding any and all persons who were hired to fill plaintiff's job, including but not limited to each such person's entire personnel file.

23. Any and all evaluations of the job performance of any and all persons who were hired to fill plaintiff's jobs.

24. Any and all payroll information for employees with similar job titles or job descriptions as plaintiff for the years in which plaintiff was employed.

25. Any and all witness statements relating in any way to this matter.

26. Any and all documents relating in any way to any and all communications between defendant and any other employee of defendant regarding the subject matter of this lawsuit.

27. Any and all insurance policies that may provide coverage for the costs of defense in this matter or for any recovery by plaintiff in this matter.

28. Any and all documents relating in any way to any and all releases from liability that defendant asked plaintiff to sign.

29. Any and all documents relied upon or referred to in preparing defendant's interrogatory answers in this matter.

30. Any and all documents relating in any way to any defense asserted by defendant.

31. Any and all documents relating in any way to each counterclaim asserted by defendant.

32. Any and all documents relating in any way to the damages that defendant allegedly suffered.

33. Any and all audio recordings related in any way to this matter.

34. Any and all video recordings related in any way to this matter.

35. Any and all e-mails received or sent related in any way to this matter.

36. Any and all documents and electronically stored information that you referred to, relied upon, consulted, or used in any way in answering each interrogatory set forth in plaintiff's Interrogatories.

37. Any and all documents not specifically requested that relate in any way to this matter.

38. Any and all documents not specifically requested that defendant may use in any way at any deposition in this matter.

39. Any and all documents not specifically requested that defendant may use in any way at trial.

## CERTIFICATION

I certify that the foregoing statements made by me are true.   I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

I certify that all copies of documents submitted in response to these interrogatories are true and accurate copies of the original documents.

I certify that in responding to the foregoing interrogatories, I have furnished all information and all documents available to me and my agents and attorneys.

_____

*Dated*:

## NJ SUPERIOR COURT LAWYER REFERRAL AND LEGAL SERVICE LIST

**ATLANTIC COUNTY:**
Deputy Clerk, Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., 1st Fl.
Atlantic City, NJ 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk, Superior Court
Civil Division, Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601
LAWYER REFERRAL
(201)488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk, Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Road
Mt. Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk, Superior Court
Civil Processing Office
Hall of Justice
1st Fl, Suite 150
101 South 5th Street
Camden, NJ 08103
LAWYER REFERRAL
(856) 482-0618
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk, Superior Court
9 N. Main Street
Cape May Court House, NJ
08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk, Superior Court
Civil Case Management Office
60 West Broad Street
P. O. Box 10
Bridgeton, NJ 08302
LAWYER REFERRAL
(856) 696-5550
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY:**
Deputy Clerk, Superior Court
Civil Customer Service
Hall of Records, Room 201
465 Dr. Martin Luther King Jr.
Blvd.
Newark, NJ 07102
LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk, Superior Court
Civil Case Management Office,
Attn: Intake, First Fl., Court
House
1 North Broad Street
Woodbury, NJ 08096
LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk, Superior Court
Civil Records Dept.
Brennan Court House, 1st Floor
583 Newark Avenue
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk, Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822
LAWYER REFERRAL
(908) 236-6109
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk, Superior Court
Local Filing Office, Courthouse
175 S. Broad Street
P. O. Box 8068
Trenton, NJ 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk, Superior Court
Middlesex Vicinage
Second Floor, Tower
56 Paterson Street
P. O. Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk, Superior Court
Court House
P. O. Box 1269
Freehold, NJ 07728-1269
LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Morris County Courthouse
Civil Division
Washington & Court Streets
P. O. Box 910
Morristown, NJ 07963-0910
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk, Superior Court
Court House, Room 121
118 Washington Street
P.O. Box 2191
Toms River, NJ 08754-2191
LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk, Superior Court
Civil Division - Court House
77 Hamilton Street
Paterson, NJ 07505
LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY:**
Deputy Clerk, Superior Court
Attn: Civil Case Management
Office
92 Market Street
Salem, NJ 08079
LAWYER REFERRAL
(856) 935-5629
LEGAL SERVICES
(856) 691-0494

**SOMERSET COUNTY:**
Deputy Clerk, Superior Court
Civil Division Office
40 North Bridge Street
P. O. Box 3000
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk, Superior
Court
Sussex County Judicial
Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk, Superior
Court
1st Floor, Court House
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk, Superior
Court
Civil Division, Court
House
413 Second Street
Belvidere, NJ 07823-1500
LAWYER REFERRAL
(908) 859-4300
LEGAL SERVICES
(908) 475-2010