NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM MCBURNIE,<br><br>Plaintiff,<br><br>v.<br><br>CRC INSURANCE SERVICES, INC. *et al.*,<br><br>Defendants. | Civ. No. 19-20018<br><br>**OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion to Remand and Motion for Attorneys' Fees filed by Plaintiff William McBurnie ("Plaintiff"). (ECF No. 6.) Defendants BB&T Corporation ("BB&T"), BB&T Insurance Holdings, Inc., Branch Banking and Trust Company, CRC Insurance Services, Inc. ("CRC"), John Howard, and Samuel Davison Obenauer (collectively, "Defendants") oppose. (ECF No. 9.) The Court has decided this matter based upon the written submissions of the parties and oral argument. For the reasons stated herein, Plaintiff's Motion to Remand is granted and Plaintiff's Motion for Attorneys' Fees is denied.

## BACKGROUND

### I. Factual Background

This case arises out of Plaintiff's claims that Defendants retaliated against him by wrongfully terminating his employment after Plaintiff notified his colleague and Defendant CRC's parent company, Defendant BB&T, of allegedly fraudulent behavior at Defendant CRC. (Compl. ¶¶ 13–51, Ex. A., ECF No. 1.) In January 2010, Plaintiff began his employment as Vice

1

President of Crump Insurance Services, Inc., which, in April 2012, was acquired by Defendant BB&T and became part of Defendant BB&T's subsidiary, Defendant CRC. (*Id.* ¶¶ 11–12.) At Defendant CRC, Plaintiff's direct supervisor was Alex Kullman, Executive Vice President of Defendant CRC. (*Id.* ¶ 14.) In late May 2015, Plaintiff was informed by a colleague that an underwriter at Defendant CRC was willing to "write a premium . . . cheaper than the premium that Alex Kullman," the underwriter's supervisor, was instructing him to quote. (*Id.* ¶¶ 13–14.) On May 28, 2015, Plaintiff relayed this information to Mr. Kullman and the underwriter. (*Id.* ¶ 17.) In response, Mr. Kullman threatened to "write [Plaintiff] up" and "began openly criticizing [Plaintiff's] performance without justification." (*Id.* ¶¶ 18, 22.) On May 29, 2015, Plaintiff contacted Defendant Obenauer, Chairman and Chief Executive Officer of Defendant CRC, to notify him "of the matter and issues that were ongoing." (*Id.* ¶ 19.) Defendant Obenauer advised Plaintiff that he was "referring the matter to 'Corporate Investigations.'" (*Id.* ¶ 20.) During the relevant time period, Defendant Obenauer had "supervisory and/or managerial authority over [P]laintiff." (*Id.* ¶ 7.)

In July or August 2015, Plaintiff allegedly "uncovered a scheme at [Defendant CRC] whereby . . . employees were falsifying documents and altering commission figures on such documents." (*Id.* ¶ 23.) On August 3, 2015, Plaintiff spoke to the Corporate Investigations Department of Defendant BB&T about these allegations. (*Id.* ¶ 24.) On August 6, 2015, Plaintiff was removed from Mr. Kullman's team and reassigned to Defendant CRC's Long Island office. (*Id.* ¶ 25.) Beginning in March 2018, Plaintiff's supervisor, Kevin Hahn, announced reductions in Plaintiff's salary and gave Plaintiff a negative annual performance review, which he refused to discuss with Plaintiff. (*Id.* ¶ 33.) Plaintiff contends that "plans" containing targets for Plaintiff's

job performance "were constantly shifted by [Defendant CRC] in a fashion adverse to [Plaintiff] and in a manner clearly seeking to allegedly justify his retaliatory termination." (*Id.* ¶ 37.)

On March 31, 2018, Plaintiff sent memoranda to senior management teams at Defendants CRC and BB&T regarding other purported fraudulent activity and legal violations at Defendant CRC. (*Id.* ¶ 38.) On April 30, 2018, Plaintiff sent an email to Defendant Obenauer, with follow-up e-mails in early May 2018, detailing his concerns. (*Id.* ¶ 41.) Plaintiff sent similar e-mails and memoranda to Defendant BB&T between June and October 2018, including one memorandum on October 1, 2018. (*Id.* ¶¶ 42–45.) Defendant Howard was the Chairman and Chief Executive Officer of Defendant BB&T Insurance Holdings, Inc. during the relevant time period (*id.* at 20–21), and "had supervisory and/or managerial authority over [P]laintiff" (*id.* ¶ 6).

On October 8, 2018, Plaintiff's employment was terminated on the basis that he "had not 'hit' [his] . . . June 30, 2018 [production level] target and that [Plaintiff's] employment was in 'continued decline.'" (*Id.* ¶ 46.) Plaintiff claims that he had met his required production levels. (*Id.*) Plaintiff is sixty-three years old. (*Id.* ¶ 47.) Plaintiff alleges that Alex Kullman pronounced that he intended to "go young" in hiring and "would not hire anyone over the age of 50." (*Id.* ¶ 48.)

## II. Procedural History

Plaintiff filed this lawsuit in the Superior Court of New Jersey, Monmouth County, Law Division on October 1, 2019. (Notice of Removal ¶ 1, ECF No. 1.) The Complaint alleges five counts: (1) violations of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-1 *et seq.* (Compl. ¶¶ 52–54); (2) violations of New Jersey common law prohibiting retaliatory termination of employment (Compl. ¶¶ 55–57); (3) violations of the New Jersey Law against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 *et seq.*, for age discrimination

3

(Compl. ¶¶ 58–62); (4) violations of the NJLAD for unlawful retaliation (Compl. ¶¶ 63–66); and (5) aiding and abetting discrimination, harassment, and/or retaliation (Compl. ¶¶ 67–70). Plaintiff does not allege any violations of federal laws or violations of rights under the federal Constitution.

Defendants timely removed this case on November 8, 2019 on the asserted basis that Defendants Howard and Obenauer—both citizens of New Jersey—were fraudulently joined in the lawsuit to defeat diversity jurisdiction. (Notice of Removal ¶ 13.) Plaintiff is a citizen of New Jersey. (*Id.* ¶ 9.) The other corporate defendants in the Complaint are not citizens of New Jersey for purposes of diversity jurisdiction. (*Id.* ¶ 10.) On November 21, 2019, Defendants Howard and Obenauer filed a Motion to Dismiss. (ECF No. 5.) On November 22, 2019, Plaintiff filed a Motion to Remand and a Motion for Attorneys' Fees. (ECF No. 6.) On November 29, 2019, Defendants BB&T, BB&T Insurance Holdings, Inc. Branch Banking and Trust Company, and CRC filed an Answer to the Complaint. (ECF No. 8.) On March 6, 2020, the Court held oral argument on the Motion to Remand and the Motion for Attorneys' Fees. The Motion to Remand and the Motion for Attorneys' Fees are presently before the Court.

## **LEGAL STANDARD**

A defendant may remove a civil action filed in state court to the federal court where the action might originally have been brought. 28 U.S.C. § 1441(a). However, the federal court to which the action is removed must have subject-matter jurisdiction. *Id.* Federal district courts have subject-matter jurisdiction on the basis of diversity when the action arises between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). To establish complete diversity of citizenship between the parties, each plaintiff must be a citizen of a different state from each defendant. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373

(1978). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

If a court determines that non-diverse defendants have been "fraudulently joined" for the purpose of defeating diversity jurisdiction, their citizenship may be disregarded and the action may be removed. *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992). Joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." *Batoff*, 977 F.2d at 851 (quoting *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)). However, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id.* at 851 (quoting *Boyer*, 913 F.2d at 111). To conduct this jurisdictional analysis, courts in the Third Circuit assess whether a claim against a non-diverse defendant is "wholly insubstantial and frivolous." *Id.* at 852; *see also Glass Molders v. Wickes Cos., Inc.*, 707 F. Supp. 174, 181 (D.N.J. 1989) (citing *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983) ("The removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court.")). "[T]he inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder. Therefore, it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted." *Batoff*, 977 F.2d at 852. "A claim which can be dismissed only after an

5

intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." *Id.* at 853.

## DISCUSSION

I.  **Motion to Remand**

Defendants removed this case because they believe that Plaintiff fraudulently joined Defendants Obenauer and Howard. (Notice of Removal ¶¶ 26–34.) The parties disagree about the ways in which Defendants can demonstrate that Plaintiff fraudulently joined Defendants Obenauer and Howard. Defendants contend that they can demonstrate fraudulent joinder in this case by showing that Plaintiff lacks an adequate factual basis for his NJLAD, CEPA, or New Jersey common law claims. (*See id.* ¶¶ 27, 30–31.) Plaintiff argues that he has pleaded sufficient facts in the Complaint to overcome an allegation of fraudulent joinder, and that Defendants must show that Plaintiff's claims against Defendants Obenauer and Howard are impossible as a matter of law or that Plaintiff otherwise failed to bring a valid cause of action. (*See* Pl.'s Br. at 15–17; Pl.'s Reply at 5, ECF No. 10.)

The Court finds Plaintiff's position more persuasive. In *Batoff*, the Third Circuit found no fraudulent joinder where (a) a dispute existed as to whether the joined defendant had obtained an employment status so as to satisfy an element of a Pennsylvania conspiracy statute, and (b) the Pennsylvania state court might not find that the joined defendant was immune from liability. 977 F.2d at 852–53. By contrast, in *In re Briscoe*, the Third Circuit held that joinder of non-diverse defendants was fraudulent when the claims against them were time-barred under the governing statute of limitations. 448 F.3d at 223. A legal impossibility in *In re Briscoe*—absent in *Batoff*— precluded the possibility that a state court could conclude that the plaintiffs had stated a valid cause of action. *Cf. Brown v. Jevic*, 575 F.3d 322, 327 (3d Cir. 2009) (finding fraudulent joinder

6

because it was improper for the plaintiff to sue the defendant in state court after the defendant had filed for bankruptcy protection); *see also Glastein v. CareFirst Blue Cross Blue Shield*, 2019 WL 1397488, at *3 (D.N.J. March 28, 2019) (citations omitted) (citing "a claim barred by a defendant's legal privilege or by the applicable statute of limitations" and a claim in which "plaintiff brings the claim outside a statutory framework when the statutory framework provides the exclusive means of recovery" as two examples of when courts find fraudulent joinder); *Bradley-Williams v. Agency Ins. Co. of Md., Inc.*, 282 F. Supp. 3d 882, 885 (E.D. Pa. 2017) ("Where [state] law does not expressly prohibit a claim for which there may be a colorable basis, district judges have hesitated to exclude the possibility of a remedy."); *Slater v. Hoffman-La Roche Inc.*, 771 F. Supp. 2d 524, 528 (E.D. Pa. 2011) ("A finding of fraudulent joinder is usually reserved for situations where recovery from the forum or non-diverse defendant is a clear legal impossibility.").

Persuasive precedent similarly suggests that it is not the district court's role when assessing potential fraudulent joinder to scrutinize the merits of a plaintiff's claims. In *Berckman v. United Parcel Serv.*, 2007 WL 4080372 (D.N.J. Nov. 14, 2007), a plaintiff brought an aiding and abetting claim under the NJLAD against a non-diverse defendant. *Id.* at *1–2. After describing the potential bases for aiding and abetting liability under the NJLAD, the court explained:

> The Court disagrees with Defendant's assertion that the language of the Complaint precludes Plaintiff from meeting [the standard of aiding and abetting claim under the NJLAD] as this case develops; Plaintiff is not required to prove his case against [the joined defendant] in order to overcome the "fraudulent joinder" accusation. . . . The Complaint against [the defendant] satisfies the notice and pleading requirements and alleges that [the defendant] is an aider-and-abetter, having participated in the employer's refusal to provide reasonable accommodation, and thereby may be liable under the [NJLAD]. The identification of [the defendant] as a defendant against whom NJLAD liability is alleged suffices to count him as a party for jurisdictional purposes.

*Id.* The court held that joinder of the defendant was non-fraudulent and remanded the case. *Id.* at *2–3; *cf. Mersmann v. Continental Airlines*, 335 F. Supp. 2d 544, 556 (D.N.J. 2004) (finding no fraudulent joinder of the plaintiff's colleague "in light of the heavy burden upon the removing party to show that joinder occurred for improper reasons," without analyzing the merits of the plaintiff's NJLAD claim against the colleague).

Moreover, when courts in this district have held that non-diverse defendants were fraudulently joined, they have nearly always done so based on the kind of legal impossibility that barred the plaintiff's claims in *In re Briscoe*. In some cases, courts in this district have found fraudulent joinder when the plaintiff's claims were impossible because of privilege or another legal bar. *See Roggio v. McElroy*, 2010 WL 1492594, at *4 (D.N.J. Apr. 14, 2010) (finding fraudulent joinder because the claims against the non-diverse defendants were barred by the absolute litigation privilege); *Blackman & Co., Inc. v. GE Bus. Fin. Servs., Inc.*, 2016 WL 1702043, at *5 (D.N.J. Apr. 28, 2016) (finding fraudulent joinder when indemnification and contribution claims against non-diverse defendants would not be ripe until the plaintiff had established primary liabilities).

Courts in this district have similarly found fraudulent joinder when the plaintiff's claims were impossible because the non-diverse defendant did not possess the proper identity or status to be sued under the state statute. *See Sussman v. Capital One, N.A.*, 2015 WL 164095, *5 (D.N.J. Jan. 13, 2015) (finding fraudulent joinder of three joined defendants when the plaintiff did not allege that the defendants were "supervisors" under the NJLAD); *Little v. Doe*, 2010 WL 3812364, at *4–5 (D.N.J. Sept. 28, 2010) (finding fraudulent joinder in part because the joined defendant was not a "supervisor" to subject her to liability under the NJLAD); *Pegg v. United Servs. Auto. Ass'n*, 2009 WL 2928920, at *2 (D.N.J. Sept. 9, 2009) (finding fraudulent joinder in

a breach of contract action against an insurance carrier where the joined defendant was not the policy issuer); *Gil v. Related Mgmt. Co.*, 2006 WL 2358574, at *3 (D.N.J. Aug. 14, 2006) (finding fraudulent joinder in a breach of contract action where the non-diverse defendants did not have a contractual relationship with the plaintiff); *cf. Hart v. Target Corp.*, 2018 WL 447616, at *2 (D.N.J. Jan. 17, 2018) (finding no fraudulent joinder where the complaint alleged that the joined defendant was the manager of a retail store who was responsible for oversight at the time of the plaintiff's slip-and-fall accident); *Cardillo v. Wal-Mart Stores, Inc.*, 2014 WL 7182525, at *2 (D.N.J. Dec. 16, 2014) (finding no fraudulent joinder where the complaint alleged that the defendants were negligent and owned, operated, and managed the premises where the plaintiff was injured). In another case, the court has found fraudulent joinder where a plaintiff did not raise any claims against the non-diverse defendants and the defendants were not indispensable parties. *See Moorehead v. Nat'l Union Fire Ins. Co.*, 2007 WL 2790768, at *3 (D.N.J. Sept. 24, 2007) (legal malpractice action).[1]

Taking into consideration the Third Circuit's directive that "[i]f there is even a *possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court," *Batoff*, 977 F.2d at 851 (quoting *Boyer*, 913 F.2d at 111) (emphasis added), the

---

[1] In *Sussman*, a NJLAD case, the court also held that joinder of a fourth defendant, the plaintiff's direct supervisor, was fraudulent because the plaintiff did not allege statements that the defendant performed wrongful acts that caused injury, was aware of his roles in facilitating illegal activity, or knowingly or substantially assisted in the principal violation. 2015 WL 164095, at *5. The only allegation that the plaintiff made against the supervisor, the court explained, was that the supervisor was made aware of the plaintiff's medical condition and the plaintiff's desire to return to work. *Id.* at *6. This approach to fraudulent joinder analysis differs from the courts' approaches in *Berckman*, *Mersmann*, and the other cases cited above in that it more closely resembles a Rule 12(b)(6) analysis.

9

Court will evaluate each of Plaintiff's claims in turn to determine whether they are "wholly insubstantial and frivolous."

   A.   *NJLAD Claims*

Plaintiff alleges that Defendants aided and abetted unlawful "discrimination, harassment and/or retaliation" under the NJLAD. (Compl. ¶¶ 67–70.) "[I]ndividual liability of supervisors [under the NJLAD] . . . can only arise through the 'aiding and abetting' mechanism" of the NJLAD. *Cicchetti v. Morris Cty. Sherriff's Office*, 947 A.2d 626, 645 (N.J. 2008) (quoting N.J.S.A. § 10:5-12(e)). For a defendant to be liable as an aider or abettor under the NJLAD,

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of the overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation.

*Id.* (quoting *Tarr v. Ciasulli*, 181 N.J. 70, 84 (N.J. 2004)). Aider-or-abettor liability under the NJLAD "require[s] active and purposeful conduct." *Id.*

For the purposes of assessing fraudulent joinder, the Complaint avers facts suggesting that it is not "wholly implausible" that Defendants Obenauer and Howard were involved in the alleged prohibited actions that Plaintiff claims caused his termination. Defendants Obenauer and Howard were members of upper-level management of Defendants CRC and BB&T with "supervisory and/or managerial authority" over Plaintiff. (Compl. ¶¶ 6–7.) Additionally, Plaintiff alleges that in May 2015, Plaintiff notified Defendant Obenauer "of the matter and issues that were ongoing." (*Id.* ¶ 19.) Defendant Obenauer advised Plaintiff that he was "referring the matter to 'Corporate Investigations.'" (*Id.* ¶ 20.) On April 30, 2018, Plaintiff sent an e-mail to Defendant Obenauer detailing his concerns about apparent fraudulent activity and violations of law at Defendant CRC. (*Id.* ¶ 41.) Plaintiff also sent e-mails and memoranda to Defendant BB&T regarding his concerns throughout the summer and fall of 2018, including one

10

memorandum on October 1, 2018, one week before his termination. (*Id.* ¶¶ 42–45.) This case differs from *Little*, in which the fraudulently joined defendants had no supervisory authority over the plaintiff. *Compare Little*, 2010 WL 3812364, at *4–5, *with* (Compl. ¶¶ 6–7). Unlike in *Little*, Plaintiff has alleged that Defendants Obenauer and Howard had supervisory or managerial authority over Plaintiff during all relevant times.

Defendants argue that Plaintiff's decision not to sue Alex Kullman and Kevin Hahn—both citizens of states other than New Jersey (Notice of Removal ¶ 34)—"highlights his intent to evade this Court's jurisdiction." (Defs.' Br. at 9.) However, the question before the Court is not whether Plaintiff could have brought claims against other defendants, but whether Plaintiff fraudulently joined the named Defendants. *See Chaborek v. Allstate Fin. Servs., LLC*, 254 F. Supp. 3d 748, 753 (E.D. Pa. 2017).

For the foregoing reasons, Plaintiff's NJLAD claims against Defendants Obenauer and Howard are not "wholly insubstantial and frivolous."

B.   *CEPA Claims*

CEPA includes in its definition of "employer" "any individual . . . or any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent." N.J.S.A. § 34:19-2(a). This definition includes supervisory employees acting with the authorization of their employers. *See Palladino* ex rel. *United States v. VNA of S. N.J., Inc.*, 68 F. Supp. 2d 455, 474 (D.N.J. 1999). As stated above, Plaintiff alleged that Defendants Obenauer and Howard had supervisory or managerial authority over Plaintiff when he was terminated. Taking these facts as true, Defendants are proper defendants for purposes of a CEPA claim at this stage of the case.

11

Defendants argue that Defendants Obenauer and Howard did not take an "adverse employment action" against Plaintiff as required by CEPA. (Defs.' Br. at 11 (citing *Brennan v. Palmieri*, 2008 WL 5233782, at *6 (D.N.J. Dec. 12, 2008)).) Defendants argue that Defendant Obenauer simply referred Plaintiff's complaints to Corporate Investigations and cannot be held liable under the CEPA for this action alone. (*Id.* at 12–13.) In support of this contention, Defendants cite a NJLAD case, *Gardenhire v. New Jersey Manufacturers Insurance Company*, 333 N.J. Super. 219 (N.J. Super. Ct. 2000), to argue that "[a]n unsubstantiated allegation of an improper . . . investigation does not implicate [aiding and abetting] liability [under the NJLAD]." (Defs.' Br. at 12 (quoting *Gardenhire*, 333 N.J. Super. at 229–30).) Even if this rule is applicable to the CEPA context, the New Jersey Superior Court decided *Gardenhire* at the summary judgment stage of that case, when the court was able to assess the extent and probative value of the evidence in the record. The Third Circuit has stated that a court's inquiry when assessing potential fraudulent joinder "is far different from the summary judgment type inquiry." *Boyer*, 913 F.2d at 112. Therefore, the Court will not find that Plaintiff's CEPA claims are "wholly insubstantial and frivolous" at this juncture.

    C.    *Common Law Claims*

Defendants argue that an individual cannot be held liable for wrongful discharge under New Jersey common law. The New Jersey Supreme Court has ruled otherwise. *See Ballinger v. Del. River Port Auth.*, 800 A.2d 97, 110 (N.J. 2002) (citing *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 67, 72–73 (N.J. 1980)) ("[A]n individual who personally participates in the tort of wrongful discharge may be held individually liable."). Therefore, Defendants have not satisfied their burden of demonstrating that Plaintiff's common law claims are wholly insubstantial and frivolous.

Considering all of Plaintiff's claims, Defendants have not satisfied their burden of demonstrating that Plaintiff fraudulently joined Defendants Obenauer and Howard. Accordingly, this case must be remanded.

## II. Motion for Attorneys' Fees

"An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "[C]ourts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case." *Id.* A removing party need not act in bad faith for a court to require payment of fees and costs associated with removal. *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996). The Court does not view Defendants' removal in this case as lacking an objectively reasonable basis. Therefore, the Court will not award attorneys' fees to Plaintiff.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Remand is granted and Plaintiff's Motion for Attorneys' Fees is denied. An appropriate Order will follow.

Date: <u>March 23, 2020</u>          */s/ Anne E. Thompson*
                                                                         ANNE E. THOMPSON, U.S.D.J.